217 N.J. Super. 530 (1987)
526 A.2d 284
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SANTIAGO RAMOS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 29, 1987.
Decided June 1, 1987.
*531 Before Judges FURMAN, DREIER and SHEBELL.
Alfred A. Slocum, Public Defender, attorney for appellant (Lieberman, Ryan, Welaj & Miller, attorneys; Thomas C. Miller, Designated Counsel and on the brief).
*532 Santiago Ramos, pro se, (Santiago Ramos on supplemental brief).
W. Cary Edwards, Attorney General of New Jersey, Attorney for respondent (Cathleen Russo Delanoy, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant has appealed from his convictions of second degree burglary, N.J.S.A. 2C:18-2; third degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3a; third degree terroristic threats, N.J.S.A. 2C:12-2; and second degree attempted aggravated sexual assault, N.J.S.A. 2C:5-1 and 2C:14-2a(3). The trial judge merged the conviction for aggravated criminal sexual contact into the conviction for attempted aggravated sexual assault, and the conviction for terroristic threats into that for second degree burglary. He then sentenced defendant, a persistent offender, to an extended term of 20 years with a 10-year period of parole ineligibility for the attempted aggravated sexual assault, and for the burglary to a consecutive term of 10 years with a five-year period of parole ineligibility. Defendant's aggregate sentence, therefore, was to a term of 30 years with a 15-year period of parole ineligibility. A Violent Crimes Compensation Board penalty of $275 was also imposed.
Testimony revealed that at approximately 4:00 a.m. on November 6, 1983 defendant, after stacking cinderblocks under the window of the 14-year-old victim, opened her window and entered the bedroom in which she was sleeping alone. The victim awoke as he pulled the sheets from her. When the victim realized that defendant was not a family member playing a prank on her, she hit him in the face, causing his glasses to fall off. After retrieving his glasses he held the victim's mouth and neck onto the pillow and told her if she moved he would kill her. He then attempted to undress her but she managed to roll off the bed on the side opposite defendant and to call for her *533 parents. Although the defendant again attempted to approach the victim, he apparently heard the victim's mother call back that she was coming to the victim's aid, whereupon he ran back to the window and jumped out head first. The victim testified that someone had turned on a light in the apartment building across the alley and she was able to see defendant's face. After the police were called, they investigated the scene, took a description from the victim and discovered butts of Kool cigarettes both near the cinderblocks beneath the window and in the area where cinderblocks had been stored nearby.
The victim described her assailant as a dark-skinned male, possibly in his 30's, approximately 5' 10" tall, with black curly hair, wearing dark glasses, a black jacket, blue jeans and light blue sneakers. Although he spoke fluent English, she said he looked as if he may have been Hispanic[1]. She also detected an odor of alcohol on his breath and thought he might have been smoking. She did not initially recognize the person who had assaulted her. A few hours later, at 10:00 a.m., the victim viewed a lineup of nine color photographs of Hispanic males of similar age and physical appearance. She identified defendant's photograph without any doubt in her mind. As the girl was reviewing the written statement her brother spoke to her and himself recognized defendant's photo as that of a son of a friend of the victim's grandfather. The victim then also realized that she had seen the defendant before on a few occasions although she did not recall his name or anything else about him. She testified that although she had seen defendant in passing once or twice, she never spoke to him nor did she know where he lived. An arrest warrant was obtained and defendant was arrested shortly after 2:00 p.m. on the same day. Defendant resided in a building located directly behind the victim's house separated only by a yard, a collapsed fence, and the alleyway from which access was secured. Apparently, the victim's window *534 would have been visible from defendant's building and the alleyway, and the proximity of the structures was compatible with the State's theory that the motive for defendant's entry was a sexual attack on the girl.
When the police entered defendant's apartment they found him dressed only in jogging shorts. Defendant was informed of the warrant and given Miranda warnings. He then indicated that he wished to get dressed and requested that his wife bring him a pair of shoes. Initially, she returned with a pair of light blue sneakers, but after a brief conversation with defendant in Spanish brought him a pair of dress shoes to wear. Defendant was not then wearing his glasses and one of the detectives, who had known defendant casually for several years and had seen the photograph of defendant in which he was wearing glasses, inquired where his glasses were. Defendant responded that he did not wear glasses. He was then taken to police headquarters, processed, and again read his Miranda rights. At that time he smoked three Kool cigarettes. A chemist from the State Police Laboratory analyzed the butts from these cigarettes, the cigarette butts found outside the victim's home, and samples of defendant's blood and saliva[2].
Police obtained a search warrant for defendant's apartment and found a pair of prescription glasses with dark frames, a gray jacket, a pair of blue jeans and light blue sneakers, all similar to the description the victim gave of the clothing worn by her attacker.
*535 Defendant has raised six points on this appeal:
Point I
The trial court erred by failing to charge the jury on third degree burglary (partially raised below).
Point II
The trial court erred in denying defense counsel's motion to suppress the statement made by the defendant in the absence of a valid waiver by the defendant of his Miranda rights.
Point III
The trial court erred in permitting improper and highly prejudicial testimony on redirect examination.
Point IV
The trial court erred in failing to charge the jury regarding its use of prior inconsistent statements of the victim as substantive evidence.
Point V
The trial court erred by failing to merge Count I involving burglary into Count IV involving attempted aggravated sexual assault during a burglary.
Point VI
The trial court abused its sentencing discretion by imposing maximum terms and parole disqualifiers as well as consecutive sentences.
Defendant first claims that the court should have charged third degree burglary. Burglary is a third degree crime unless there is a showing that the actor either "purposely, knowingly or recklessly inflicts, attempts to inflict, or threatens to inflict bodily injury on anyone," or "is armed with or displays what appears to be explosives or a deadly weapon," in which case the crime is one of second degree. The judge only charged second degree burglary.
In the case before us it is clear that defendant at least threatened to inflict bodily injury. But it is conceivable that a jury might have found that his purpose for entering the premises was other than to attack the young victim, and proceeded to do so only when she was discovered in the room. This was urged by defense counsel at trial after the court on its own motion raised the question of whether third degree burglary should also be charged. The prosecutor opposed such a charge and the court requested that defense counsel state specifically whether he wanted the charge to be given. He informed the judge that he would let the court decide, and the judge then decided to omit the charge.
*536 Without a proper request to charge, even granting that robbery was a theoretical possibility, no facts appear from which a motive could be determined for the entry other than to attack the child. We thus determine that the only basis for reversal on this point would be a finding of plain error under R. 2:10-2, notwithstanding the discussion at trial. Defense counsel cannot leave a matter up to the trial judge's discretion and then urge a particular resolution on appeal different than what the judge had determined at trial, unless it is plain error "clearly capable of producing an unjust result," and separately remediable on appeal. R. 2:10-2. Such a trial tactic leaves the defense in a position to claim on appeal that he demanded the opposite action of whatever the trial court determined. A trial judge's decision not to charge a lesser-included offense will not be upset on appeal unless the facts adduced at trial clearly indicated the appropriateness of the omitted action[3]. State v. Choice, 98 N.J. 295, 299-300 (1985); State v. Powell, 84 N.J. 305, 318 (1980); State v. Vujosevic, 198 N.J. Super. 435, 445 (App. Div. 1985), certif. den. 101 N.J. 247 (1986). And see N.J.S.A. 2C:1-8e. In view of our sentencing decision, to be stated infra, even if there were error which should be noticed at this stage, the practical effect upon defendant is nil.
Defendant's second point is that defendant's statement that he did not wear glasses should have been suppressed since it was the result of an improper custodial interrogation in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant had already been informed of his constitutional rights before he answered and knew that he did not have to answer the question. However, an express *537 waiver had not yet been obtained. The judge stated that he did not believe that the question was a part of a custodial interrogation, but even if it was defendant had been informed of his rights. When defense counsel requested a clarification of the ruling, the court determined that the situation was not custodial. The judge stated:
I'm not saying [defendant] wasn't in custody. He probably was in custody, but this was not in-custodial interrogation in the police station in a room where in-custodial questioning takes place.
We disagree with this interpretation:
The Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. [Rhode Island v. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980)].
It is clear that defendant had already been arrested and was thus in custody. If the purpose of the detective's inquiry had been to elicit information to aid the investigation, the Miranda safeguards pertained. But, from the context of the question to defendant, it appears that he was not being interrogated. The detectives knew that defendant wore glasses, from both prior observations of defendant over the years and having just seen his photograph in which he was depicted wearing glasses. Defendant was in the process of getting dressed. Yet defendant had not yet put his glasses on. The question "Where are your glasses?" was no more an interrogation than if defendant had not put on his shoes and was asked "Where are your shoes?" The unexpected response that defendant did not wear glasses was not the result of an interrogation as to whether defendant wore glasses or not, but was a non-responsive answer to a question directed to prod defendant to finish dressing so that he could be taken to police headquarters. The trial judge found as a fact that the comment to defendant was "a casual remark." We agree with this factual finding, notwithstanding our different analysis of the Miranda principles. Cf. State v. Barnes, 54 N.J. 1 (1969), cert. den. 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 525 (1970).
Defendant's next point concerns an officer's testimony that he was familiar with the defendant. Defendant asserts *538 that the statement implied previous arrest convictions or civil wrongs. The officer made it clear that as a patrol officer he knew many people who lived in the neighborhood and that even before he was a police officer he knew defendant and had seen him in the area. He also described him as wearing dark framed glasses which appeared to be prescription glasses. We discern no violation of Evid.R. 55, nor do we see the statement's capacity to prejudice the defendant by implying that he had committed previous criminal acts or was otherwise disposed toward criminal behavior.
Defendant further urges that the trial judge gave an erroneous limiting instruction concerning the use of the victim's pretrial statements. We agree with defendant that the statement of law was incorrect. An apparently inconsistent pretrial statement of a witness given under circumstances which satisfy Evid.R. 63(1)(a), is not, as stated by the court, limited to affecting the witness's credibility at trial. The rule is clear that such statements are admissible for their substantive content. State v. Provet, 133 N.J. Super. 432 (App.Div.), certif. den. 68 N.J. 174 (1975). The problem, however, is that the statement here was made only a few hours after the event, and, although it differed slightly from the abbreviated statement made to the police on the scene while the victim was apparently still hysterical, it was not substantially different from the victim's testimony at trial. The trial judge's refusal to charge that the prior statement would be admitted as substantive evidence was proper, because the statement was not inconsistent with the trial testimony. The initial statement at the scene apparently satisfied the spontaneous declaration exception in Evid.R. 63(4)(b) and was thus substantively admissible. However, considering the total picture before the jury, we find that any error in the charge concerning the admission of these statements was clearly harmless. R. 2:10-2.
Defendant's fifth and sixth points involve the questions of merger and sentencing and will be considered together. *539 Defendant claims that the burglary conviction should have merged into the conviction for attempted aggravated sexual assault occurring during a burglary. The trial judge pointed out that although defendant was convicted of an attempted aggravated sexual assault, the attempt was to commit the first degree crime of aggravated sexual assault which constituted a second degree crime because it was an attempt instead of a completed act. See N.J.S.A. 2C:5-4a. The judge further noted that defendant could have been charged and convicted of an attempted sexual assault, a second degree crime which would have remained such. He, therefore, found that the burglary was not required to support defendant's conviction for attempted aggravated sexual assault.
The problem with this analysis, however, is that defendant was convicted and sentenced for the second degree crime of an attempt to commit a first degree crime for which the burglary was a necessary element. The judge merged only the terroristic threat conviction into the burglary finding that
the burglary was a burglary into the bedroom with the purpose to terrorize the victim. The sexual assault was a sexual assault independent from the burglary for the gradation of attempt.
Again, we do not agree with the trial court's analysis. It is true that the burglary was complete upon entry and was raised to a second degree crime only because of the later events. See State v. Pyron, 202 N.J. Super. 502, 504 (App.Div. 1985). Yet, unlike in State v. Pyron, defendant here was convicted of a greater offense, i.e., attempted aggravated sexual assault only because he had committed the burglary. The aggravated sexual assault attempted by defendant required proof that he committed the act "during the commission ... of ... burglary." N.J.S.A. 2C:14-2a(3). A necessary element of the crime is the burglary which raises the crime to one of the first degree. The elements of the crime cannot be fractionalized and subject to separate convictions. State v. Mirault, 92 N.J. 492, 504 (1983). Therefore, defendant cannot be twice punished for this burglary. The particular merger of the lesser into the greater of the *540 sexual offenses is also mandated. N.J.S.A. 2C:1-8a(1) and d(1), (2) and (3). Notwithstanding the fact that the attempted aggravated sexual assault and the merged sexual contact convictions both were crimes of the second degree, defendant has been convicted and sentenced for the greater sexual crime which also encompassed the burglary. The burglary conviction, therefore, must be merged into that for attempted aggravated sexual assault.
The Supreme Court in State v. Truglia, 97 N.J. 513, 520-21 (1984), stated that in merger analysis we must not employ a strict mechanical approach, but rather should pursue the flexible course formulated in State v. Davis, 68 N.J. 69 (1975), and followed in later cases. Under such an approach, defendant's entry into the building in order to effect a sexual assault upon the victim and his later attempt to do so can only be seen as constituting the first step in the attempted aggravated sexual assault of which he was convicted[4]. Although there must have been a basis for a conviction for second degree burglary under N.J.S.A. 2C:18-2b(1) by reason of the threats against the victim, the second degree burglary was also supported by the attempted sexual attack. Therefore, the conviction for terroristic threats employed to effect defendant's purposes might well have stood independently, without merger, and have constituted an additional basis for sentencing. Cf. State v. Rodriguez, 97 N.J. 263, 276-277 (1984).
Since the trial judge's merger decisions and sentences based thereon did not conform to this analysis, we feel constrained to remand the matter for a redetermination of the merger issues and resentencing. We also call to the attention of the trial judge the standards of State v. Yarbough, 100 N.J. 627, 644 (1985), cert. den. sub nom. Yarbough v. New Jersey, ___ U.S. ___, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), for the imposition of *541 consecutive sentences, and the necessity to state separately the reasons for any such imposition.
Reversed and remanded for reconsideration of the issues of merger and for resentencing; otherwise affirmed.
NOTES
[1] Defendant actually was 5' 10" tall, wore prescription glasses, was of Hispanic origin and spoke English without any accent.
[2] The chemist testified that tests on his blood revealed that he had type O blood. She also found from tests of his saliva that he was a secretor, which means that a person's blood type can be detected in their other body fluids, e.g., saliva, sweat or urine. Analysis of the cigarette butts revealed that the smoker of all of the cigarette butts confiscated was a secretor who had type O blood. The chemist testified further that approximately 45% of the Hispanic population are type O secretors.
[3] On the particular facts of this case we need not decide whether a judge may charge second degree burglary without charging third degree burglary, since under the wording of N.J.S.A. 2C:18-2 the third degree offense is the basis for the second degree crime with additional aggravating factors. Cf. State v. Federico, 103 N.J. 169, 176-177 (1986).
[4] As noted earlier in this opinion, it is possible that the entry was for another purpose such as theft. But there is no support in this record for such a theory.