245 N.J. Super. 195 (1991)
584 A.2d 847
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALVIN LOVE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 20, 1990.
Decided January 9, 1991.
*196 Before Judges BRODY and D'ANNUNZIO.
Wilfredo Caraballo, Public Defender, attorney for appellant (Bernadette DeCastro, Assistant Deputy Public Defender, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Sandra M. Iammatteo, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Tried by a jury under Atlantic County Indictment No. 88-03-0671, defendant was convicted of third degree burglary (N.J.S.A. 2C:18-2) and third degree theft (N.J.S.A. 2C:20-3a). The court sentenced defendant to concurrent five-year terms of imprisonment with a 2 1/2 year term of parole ineligibility. Those sentences were to be served consecutively to a sentence that he was serving at the time. Defendant now appeals and makes the following contentions:

*197 POINT I
The testimony of investigator Prendergast that he had prior contact with defendant when he interviewed defendant during a previous homicide investigation was unduly prejudicial and requires a reversal. (Not raised below).
POINT II
The defendant's conviction for burglary and theft was against the weight of the evidence. (Not raised below).
POINT III
The trial court's instruction to the jurors that it was their sole interest to ascertain the truth diluted the State's burden of proof and deprived defendant of due process. (U.S. Const. Amend. XIV; N.J. Const. (1947), Art. I, Par. 1) (Not raised below).
POINT IV
The imposition of a sentence above the presumptive term as well as a parole disqualifier was contrary to the sentencing guidelines as the court failed to consider mitigating factors.
We have carefully reviewed the record and, in light of applicable law, we conclude that those contentions are without merit.
As to Point I, we note that it was defense counsel who established through cross-examination that Investigator Prendergast, whose residence had been burglarized, had prior professional contact with defendant. We conclude that Prendergast's response to defense counsel's questions was harmless. When asked by defense counsel whether he had ever seen defendant before today, Prendergast stated:
I believe there was a prior contact I had with him. I don't recall the entire incident but there was index card in our file indicating that I had interviewed him during a homicide investigation.
Q. But you don't recall that?
A. No, not really. I don't believe it was a very in-depth interview.
Contrary to defendant's suggestion, the limited exchange would not have supported an inference by the jury that defendant had been involved in prior criminal activity, and, therefore, *198 we conclude that Evid.R. 55 was not applicable. Cf. State v. Ramos, 217 N.J. Super. 530, 537-538, 526 A.2d 284 (App.Div. 1987) (officer's testimony that he was familiar with defendant did not violate Evid.R. 55).
Defendant's contention that the verdict was contrary to the weight of the evidence is not cognizable on appeal because defendant did not move for a new trial in the trial court. R. 2:10-1. Nevertheless, having reviewed the record, we are satisfied that the evidence was sufficient to sustain defendant's convictions. The State produced evidence that the victim's golf clubs had been moved within the burglarized premises. The State also presented evidence that defendant's fingerprint was found on one of the clubs. Contrary to defendant's contention, we are satisfied that there was a sufficient foundation for the admission of the testimony of the State's fingerprint expert. Additionally, the State presented the testimony of Ricky Campbell who testified that defendant had attempted to sell the victim's jewelry to Campbell's girlfriend and that Campbell had accompanied defendant to a pawnbroker to dispose of the jewelry. Subsequently, the police retrieved the victim's jewelry from the same pawnbroker.
Under Point III in his brief, defendant focuses on three sentences in the court's jury instructions. At the conclusion of his charge, the court stated:
You are not partisans. You are judges, judges of the facts. And your sole interest is to ascertain the truth on the evidence in this case.
Defendant contends that this portion of the charge violated his right to due process because it "lessened the State's burden of proof." In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (reasonable doubt standard is protected under the Due Process Clause). Defendant places particular reliance on four federal decisions. They are clearly distinguishable from the present case.
In Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and Francis v. Franklin, 471 U.S. 307, 105 *199 S.Ct. 1965, 85 L.Ed.2d 344 (1985), the Court ruled that instructing a jury that a person is presumed to intend the consequences of his acts shifted a proof burden to defendant, thereby impairing defendant's right to require the state to prove every element of a crime beyond a reasonable doubt and shifted a proof burden to defendant. In the present case, the challenged excerpt did not involve a presumption instruction.
In United States v. Oquendo, 490 F.2d 161 (5th Cir.1974), a drug distribution prosecution, defendant claimed that the heroin he distributed to a government agent had been supplied to defendant by the agent's informer. The informer testified for the government and denied defendant's allegations. To avoid an entrapment defense under United States v. Bueno, 447 F.2d 903 (5th Cir.1971), the government had to establish beyond a reasonable doubt that defendant had not received the heroin from the informer.
The trial court instructed the jury that its verdict depended on credibility. The court told the jury that if they believed Oquendo they should acquit him, but if they didn't believe Oquendo and believed the informer, the defendant "ought to be convicted." Oquendo, supra, 490 F.2d at 164. The Court of Appeals held that the trial court "committed reversible error by repeatedly casting the jury's ultimate determination of whether to convict or acquit in terms of a mere credibility choice between the informer and appellant." Id. at 165. The Court of Appeals concluded that the instructions had the practical effect of directing a guilty verdict if the jury did not believe Oquendo. Id. at 166.
Defendant also relies on United States v. Pine, 609 F.2d 106 (3d Cir.1979). In that case, the trial court had instructed the jury:
Fundamentally, this case, as most cases do, involves the [sic] question of fact. The basic question is whether the Government's witnesses are telling the truth or whether the defendants and their witnesses are telling the truth. Your basic task is to evolve the truth. [609 F.2d at 107-108.]
*200 The Court of Appeals agreed with defendant "that the meaning of the instruction runs counter to the requirement of proof beyond a reasonable doubt." Id. at 108. However, after examining the trial court's charge in its entirety, the Court of Appeals concluded that defendant had not been denied "his constitutional right to be convicted only upon proof beyond a reasonable doubt." Id. at 109.
Oquendo and Pine are distinguishable from the present case. In the present case the trial judge did not attempt to make a verdict dependent on the outcome of a single credibility decision or on the outcome of a credibility contest between the State and defense witnesses.[1] In reviewing a charge we must examine it as a whole. State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973). In doing so, we note many references by the trial judge to the requirement of proof beyond a reasonable doubt. See State v. Hunt, 115 N.J. 330, 372-373, 558 A.2d 1259 (1989) (no error in charging jury that it had to determine "where the truth rests" where jury was adequately instructed regarding the State's burden of proof).
Moreover, the challenged excerpt was not part of the court's substantive charge. Rather, it was part of the court's instruction regarding the process of jury deliberations and the role of each juror in that process. The excerpt is the closing paragraph of the instruction recommended by our Supreme Court in lieu of the Allen[2] charge which had been frequently given to deadlocked jurors. State v. Czachor, 82 N.J. 392, 405, 413 A.2d 593 (1980). In Czachor, the Court directed that this charge be given in the general jury charge and suggested that it may be repeated if a jury is unable to agree. Id. at 407, 413 A.2d 593. In this context "truth" is used in an abstract sense and not as an admonition to resolve specific factual disputes. Finally, we note that defendant raises this issue as plain error, no objection *201 to this part of the charge having been made at trial. See State v. Hunt, supra; State v. Wilbely, supra.
We conclude that the excerpted language did not dilute defendant's right to be convicted only upon proof beyond a reasonable doubt. However, we take this opportunity to caution the trial bench to be sensitive to the prejudicial potential of instructions which may lead a jury to believe that a not guilty verdict must be based on a credibility finding favorable to the defendant, that a guilty verdict is triggered automatically by a credibility finding favorable to the State, or that a defendant may be found guilty if the jury is unable to determine the facts from the evidence.
We perceive no basis in this record to disturb the sentence.
Affirmed.
NOTES
[1] The defense presented no witnesses.
[2] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).