706 A.2d 220

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. WILLIAM ALLEN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 21, 1997—Decided February 20, 1998.

Before Judges CONLEY, WALLACE and CARCHMAN.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Linda Mehling*, Assistant Deputy Public Defender, of counsel and on the brief).

*Clifford J. Minor,* Essex County Prosecutor, attorney for respondent (*Jane Deaterly Plaisted,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

CARCHMAN, J.S.C, (temporarily assigned).

Following a jury trial, defendant was convicted of third-degree possession of a controlled dangerous substance, *N.J.S.A.* 2C:35–10a(1); third degree possession of a controlled dangerous substance with the intent to distribute, *N.J.S.A.* 2C:35–5b(3); and possession of a controlled dangerous substance with the intent to distribute within 1000 feet of school property, *N.J.S.A.* 2C:35–7. On appeal defendant claims, among other things, that the trial judge failed to charge the jury on issues of unanimous verdict, witness credibility and prior inconsistent statements as a result of which, defendant did not receive a fair trial. We conclude that the charge taken as a whole failed to instruct the jury on issues that were germane to the case and the jury's deliberations. Accordingly, we reverse and remand for a new trial.

The facts are these. On the afternoon of May 2, 1995, members of the East Orange narcotics unit were conducting surveillance of drug activity in the area of Main and 15th Streets in East Orange, a location within 1000 feet of school property. Detectives Tucker and Louis were in plain clothes and in an unmarked car attempting to detect drug transactions. Back-up was provided by Detectives Martinez and Cox, who were driving in the area also in an unmarked car and dressed in plain clothes. At about 3:00 p.m., Tucker observed defendant engage in what appeared to be several drug transactions in the vicinity of Main and 15th Streets.

Tucker saw a suspected buyer, Sykes, park his car across the street from where defendant was standing. According to Tucker, defendant approached the car, had a short conversation with the occupant, and appeared to provide the occupant with a small item in exchange for money. Tucker then radioed other units and instructed them to detain defendant while Tucker and Louis

followed and arrested Sykes. Sykes was apprehended, detained and searched and found to be in possession of a bag of marijuana.

Martinez and Cox saw defendant standing on the corner outside of Cooper's Delicatessen. According to Martinez, after defendant made eye contact with the detectives, defendant turned, dropped something to the ground, and began to walk away. Cox retrieved the dropped item, which proved to be a snuff can containing twenty-two bags of heroin. Defendant was detained, searched and found to be in possession of ten dollars. He was then handcuffed and taken to police headquarters. Tucker identified defendant as the person he had seen in the drug transactions.

During cross examination of the State's two police witnesses, defense counsel highlighted several alleged inconsistencies between the officers' testimony and their police reports of the incident. Defense counsel pointed out that while Tucker claimed at trial that he had seen defendant engage in multiple drug transactions, his police report, prepared the day of the incident, indicated that he had only observed a single transaction. When Tucker was told of this discrepancy on cross examination, he stated that he had made an error on the police report and that it should have indicated the observation of several transactions.

Next, defense counsel asked Tucker about another inconsistency between his police report, in which he said that a bag of marijuana was seized from Sykes at headquarters, and his trial testimony in which he said the marijuana was found during a search of Sykes at the scene of his arrest. Again, Tucker explained that the report was erroneous and that the marijuana had been found on Sykes' person at the time of his arrest.

Defense counsel then noted that while Tucker claimed in his testimony that the back-up unit—Martinez and Cox—had gone directly to the scene to arrest defendant at the same time that Tucker and Louis followed and arrested Sykes in Newark, Tucker's police report indicated that the back-up units had *returned* to the scene in East Orange to attempt to find defendant. Tucker explained that there were several back-up units involved in the

surveillance operation and that he had requested back-ups to help with the arrest of Sykes, but when no help arrived, he and Louis arrested Sykes.

During cross examination of Martinez, defense counsel asked Martinez to explain why, if he and Cox had arrested defendant, the arrest report indicated that Louis and Cox had been the arresting officers. Martinez denied that there was any error in the police report suggesting that any officer in the group conducting surveillance and making the arrest can get credit for the arrest on the police report.

Prior to trial, defense counsel served a subpoena on Sonny Cooper, the owner of the delicatessen outside of which the police claimed to have arrested defendant. The subpoena was made returnable at 11:00 a.m. At 10:50 a.m., the witness had not appeared and the judge gave the jury a twenty minute break. By 11:15, the witness still had not appeared and the judge allowed for fifteen more minutes. At 11:30, having waited a total of forty minutes for the witness to appear, the court declined to give any further adjournment. While waiting for the witness, the State argued that defendant had never revealed during discovery the existence of a defense witness. Additionally, defense counsel had not offered any proof demonstrating the materiality of the testimony.

During the conference on jury instructions, defense counsel requested that the court give a legal instruction addressing prior inconsistent statements by a witness, because of the alleged inconsistencies between the trial testimony and police reports. The trial judge refused to give the charge stating:

[i]t is not a statement, that's the police report. It is not evidential. A statement is under oath and evidential.

No, I am not going to give inconsistent statement. You can argue the difference in the report and what is testified to, but it is not an inconsistent statement.

The statement is not under oath.

This was not offered as a statement.

The trial judge included in his jury charge the instructions that the jury's verdict must be unanimous, that its decision must not be biased, prejudiced or based on sympathy.

Defendant was convicted on all three counts. A few minutes after the verdict, defendant's mother left the courtroom and went into the hallway, where she contends she was approached by one of the deliberating jurors. The juror allegedly told defendant's mother that the she and another juror believed that defendant was innocent, but had changed their votes to guilty when another juror told them that if they did not, the jury would have to continue deliberating for the remainder of the day. Defense counsel filed a motion and supporting certifications requesting a *voir dire* of one of the jurors, which motion was denied by the trial judge.

The State filed an application for extended term sentencing pursuant to *N.J.S.A.* 2C:43–6f. The trial judge granted the State's motion, merged Counts One and Two with Count Three, and sentenced defendant to an extended term of nine years with a four year parole disqualifier on Count Three.

On appeal, defendant raised the following points:

I. THE JUDGE'S REFUSAL TO GIVE THE MODEL CHARGE ON PRIOR INCONSISTENT STATEMENTS, AND HIS FAILURE TO GUIDE THE JURY AS TO HOW IT SHOULD DETERMINE THE CREDIBILITY OF THE WITNESSES, WERE ERRORS REQUIRING A REVERSAL OF DEFENDANT'S CONVICTIONS. (Partially raised below)

II. THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT ITS VERDICT MUST REPRESENT THE CONSIDERED JUDGMENT OF EACH JUROR, ESPECIALLY IN LIGHT OF EVIDENCE THAT TWO JURORS CHANGED THEIR VERDICTS FROM NOT GUILTY TO GUILTY BECAUSE OF PRESSURE FROM OTHER JURORS, DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL. (Not raised below)

III. THE TRIAL COURT'S REFUSAL TO DELAY THE TRIAL SO THAT A SUBPOENAED DEFENSE WITNESS COULD BE LOCATED AND PERMITTED TO TESTIFY DENIED DEFENDANT A FAIR TRIAL.

IV. THE TRIAL COURT ERRED BY REFUSING TO GRANT DEFEN-DANTS [sic] MOTION TO CONDUCT A *VOIR DIRE* OF A JUROR WHEN THERE WAS EVIDENCE THAT TWO OF THE JURORS HAD CHANGED THEIR VOTES FROM NOT GUILTY TO GUILTY MERELY BECAUSE OTHER [sic] JURORS HAD PRESSURED THEM TO DO SO IN ORDER TO RESOLVE THE CASE. THIS COURT SHOULD RE-

MAND THE MATTER WITH DIRECTIONS TO THE TRIAL COURT TO *VOIR DIRE* THE JUROR.

V. THE NINE–YEAR EXTENDED–TERM SENTENCE WITH A FOUR–YEAR PAROLE DISQUALIFIER IMPOSED ON DEFENDANT IS MANIFESTLY EXCESSIVE.

The thrust of defendants arguments on this appeal is focussed on the jury charge. We conclude that there is merit to defendant's position. The defense strategy in defending the case was based on the credibility of the arresting officers. In this regard, defendant's cross-examination of the police officers revealed certain inconsistencies between their testimony and police reports previously prepared by the same officers, *e.g.,* the location of seizure of the marijuana and the location of defendant's arrest. While these alleged inconsistencies appear minor in terms of the ultimate issue of the criminal activity and defendant's participation therein, they certainly raise issues of credibility that must be addressed by the jury during its deliberations.

The judge's charge to the jury regarding the issue of credibility was limited to the following instruction:

Now we have a maxim in our law falsus in unum, falsus in omnibus. Roughly translated means false in one thing, false in all things.

If you believe any witness or party wilfully or knowingly testified falsely to any material fact in the case with an intent to deceive you, you may give such weight to his or her testimony as you deem it is entitled.

You may believe some of it, or you may in your discretion disregard all of it.

The charge did not go far enough. We deem this charge to be inadequate especially where the issue of credibility is the keystone to the defense. At a minimum, defendant was entitled to a full charge on the issue of credibility. The Supreme Court Committee on Criminal Charges approved a charge regarding credibility of witnesses which was appropriate here. The charge provides:

As the judges of facts, you are to determine the credibility of the witnesses and, in determining whether a witness is worthy of belief and therefore credible, you make take into consideration:

- the appearance and demeanor of the witness;
- the manner in which he or she may have testified;
- the witness's interest in the outcome of the trial if any;

- his or her means of obtaining knowledge of the facts;
- the witness's power of discernment meaning their judgement—understanding;
- his or her ability to reason, observe, recollect and relate;
- the possible bias, if any, in favor of the side for whom the witness testified;
- the extent to which, if at all, each witness is either corroborated or contradicted, supported or discredited by other evidence;
- whether the witness testified with an intent to deceive you;
- the reasonableness or unreasonableness of the testimony the witness has given;
- and any and all other matters in the evidence which serve to support or discredit his or her testimony.

Through this analysis, as the judges of the facts, you weigh the testimony of each witness and then determine the weight to give it. Through that process you may accept all of it, a portion of it or none of it.

[Model Jury Charge (Final Charge–Criminal) Credibility of Witnesses (May 23, 1994).] [1]

We stress the necessity of informing the jury of these factors in considering the credibility of a witness, especially where such credibility is the issue in the case. In determining the truth of the charges against defendant, no one factor was as critical as the believability of the witnesses called by the State. The court is obligated to inform the jury of the criteria necessary for jurors to judge the credibility of the witnesses who testify before them.

■ We, likewise, are concerned that no charge was given regarding prior inconsistent statements. *See N.J.R.E.* 803(a)(1) [2];

---

[1] The Final Jury Charge (Criminal) of the Model Jury Charge was modified on January 27, 1997. The Credibility of Witnesses charge was not modified.

[2] *N.J.R.E.* 803(a)(1) provides in relevant part:

The following statements are not excluded by the hearsay rule:
(a) Prior statements of witnesses. A statement previously made by a person who is a witness at a trial or hearing, provided it would have been admissible if made by the declarant while testifying and the statement:
(1) is inconsistent with the witness' testimony at the trial or hearing and is offered in compliance with Rule 613. However, when the statement is offered by the party calling the witness, it is admissible only if, in addition to the foregoing requirements, it (A) is contained in a sound recording or in a writing made or signed by the witness in circumstances establishing its

*N.J.R.E.* 607 [3]; E. Judson Jennings & Glen Weissenberger, *New Jersey Evidence* 226 (Anderson Publishing Co., 1997) ("The most fundamental tool for impeachment of witnesses is a prior statement by that witness which is inconsistent with his trial testimony."). Officer Tucker's police report made mention of a single drug transaction; his testimony referred to multiple transactions, testimony which went directly to the issue of "intent to distribute." The trial judge refused to give the charge asserting that the statement must be under "oath and evidential." This statement was in error. The relevancy of the requirement of the statement being under oath is to qualify the statement for admission if it is "offered by the party calling the witness." That was not the case here. Moreover, the issue was not one of admissibility but whether defendant was entitled to a charge as to a prior inconsistent statement. The officer was confronted with the statement and testified to the differences between the statements. Although we recognize that with the exception of the statement as to a single or multiple transactions, the inconsistencies are of limited probative value, but they still raise issues as to credibility which must be considered by a jury in determining the ultimate issues in the case.

The abbreviated charge as a whole omits other matters which are cause for concern. The trial court included in its charge that the verdict must be unanimous and must not be based on bias, prejudice or sympathy. The judge failed to include any comment

---

reliability or (B) was given under oath subject to the penalty of perjury at a trial or other judicial, quasi-judicial, legislative, administrative or grand jury proceeding, or in a deposition; . . .

[3] *N.J.R.E.* 607 provides is relevant part:

Except as otherwise provided by Rules 405 and 608, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence relevant to the issue of credibility, except that the party calling a witness may not neutralize the witness' testimony by a prior contradictory statement unless the statement is in a form admissible under Rule 803(a)(1) or the judge finds that the party calling the witness was surprised.

regarding consultation and deliberation with other jurors or the obligation of the juror to decide the case for himself or herself and that the vote should represent the individual view of each juror as to insure a just and proper result.[4] *State v. Czachor*, 82 *N.J.* 392, 405 n. 4, 413 *A.2d* 593 (1980). The *Czachor* charge represents New Jersey's modification of the so-called *Allen*[5] charge. While the *Czachor* charge was originally intended as a charge to be given if the jury was unable to reach a verdict, in *State v. Love*, 245 *N.J.Super.* 195, 200, 584 *A.2d* 847 (App.Div.), *certif. denied*, 126 *N.J.* 321, 598 *A.2d* 881 (1991), we commented "[i]n *Czachor*, the Court directed that this charge be given in the general jury charge and suggested that it may be repeated if a jury is unable to agree." We note, with due deference to hindsight, that two jurors alleged that they were pressured into changing their votes. We are not critical of the trial judge's handling of that matter, and we

---

[4] The applicable language of the ABA model charge is:

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts.

[Commentary to ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Trial By Jury*, § 5.4(a) at 145–147 (Approved Draft 1968) (quoting Jury Instructions and Forms for Federal Criminal cases, 27 *F.R.D.* 39, 97–98 (1968))].

[5] *Allen v. United States*, 164 *U.S.* 492, 17 *S.Ct.* 154, 41 *L. Ed.* 528 (1896).

While, in *Allen*, the United States Supreme Court upheld the use of instructions urging a jury to reach a unanimous verdict by considering all jurors' viewpoints, the New Jersey Supreme Court rejected the use of an "*Allen* charge." *Czachor, supra*, 82 *N.J.* at 394, 413 *A.2d* 593 ("[T]he so-called *Allen* charge, as commonly applied and as presently formulated, does have unacceptable coercive effects upon jury deliberations and its use can no longer be sanctioned in criminal trials in this State.").

agree that no *voir dire* of the jury was necessary,[6] but the charge would have informed the jurors as to their respective roles and possibly eliminated any suggestion of inappropriate influence by other jurors.

Our courts have consistently "placed an extraordinarily high value on the importance of appropriate and proper jury charges to the right to trial by jury. Erroneous instructions on matters material to the juror's deliberations are presumed to be reversible error." *State v. Grunow,* 102 *N.J.* 133, 148, 506 *A.*2d 708 (1986); *See also State v. Brown,* 138 *N.J.* 481, 522, 651 *A.*2d 19 (1994), *overruled on other grounds by State v. Cooper,* 151 *N.J.* 326, 700 *A.*2d 306 (1996) (clear and correct jury instructions are essential for a fair trial); *State v. Vick,* 117 *N.J.* 288, 289, 566 *A.*2d 531 (1989) ("[E]rroneous jury charges are almost invariably regarded as prejudicial ... [and] are poor candidates for rehabilitation under the harmless error philosophy."); *State v. Weeks,* 107 *N.J.* 396, 410, 526 *A.*2d 1077 (1987).

While our Supreme Court has repeatedly emphasized that instructions to a jury are to be examined as a whole, *State v. Gartland,* 149 *N.J.* 456, 473, 694 *A.*2d 564 (1997); *State v. Delibero,* 149 *N.J.* 90, 106–07, 692 *A.*2d 981 (1997), *State v. Wilbely,* 63 *N.J.* 420, 422, 307 *A.*2d 608 (1973) ("[P]ortions of a jury charge alleged to be erroneous cannot be dealt with in isolation but the charge should be examined as a whole to determine its overall effect."), we conclude that the absence of credibility, inconsistent statement and deliberation charges amount to cumulative error warranting a reversal of the conviction in this case. *State v. Orecchio,* 16 *N.J.* 125, 129, 106 *A.*2d 541 (1954). The charge to the jury is the road map for the jury to follow in its quest for the

---

[6] *See State v. Koedatich,* 112 *N.J.* 225, 288, 548 *A.*2d 939 (1988) (quoting *State v. Athorn,* 46 *N.J.* 247, 250, 216 *A.*2d 369 ("Calling back jurors for interrogation after they have been discharged is an extraordinary procedure which should be invoked only upon a strong showing that a litigant may have been harmed by jury misconduct."), *cert. denied sub nom. Athorn v. New Jersey,* 384 *U.S.* 962, 86 *S.Ct.* 1589, 16 *L. Ed.*2d 674 (1966)).

truth. *State v. Martin,* 119 *N.J.* 2, 15, 573 *A.*2d 1359 (1990). There is little room for shortcuts or abbreviated charges which may preclude the jury from finding its way. The charges complained of are part of the "standard" charge and absent a substantial basis should have been charged. We conclude that the failure to charge the issues cited was plain error. *R.* 2:10–2.

Because we conclude that the charge as a whole is deficient and will require a retrial, we need not address the remaining issues raised by defendant.

Reversed and remanded for a new trial.