**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1399-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTHONY AURIEMMA,

    Defendant-Appellant.

_____

Submitted May 4, 2017 - Decided June 20, 2017

Before Judges Lihotz and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Indictment No.
15-01-0140.

Joseph E. Krakora, Public Defender, attorney
for appellant (William Welaj, Designated
Counsel, on the brief).

Joseph D. Coronato, Ocean County Prosecutor,
attorney for respondent (Samuel Marzarella,
Chief Appellate Attorney, of counsel; John C.
Tassini, Assistant Prosecutor, on the brief).

PER CURIAM

    Defendant Anthony Auriemma appeals from a November 17, 2015

judgment of conviction, entered following a jury trial. The jury

found defendant guilty of fourth-degree knowingly operating a

motor vehicle during a period of license suspension for a second or subsequent violation of driving while intoxicated, <u>N.J.S.A.</u> 2C:40-26(b), for which the trial judge imposed a 210-day county jail sentence, subject to 180 days of parole ineligibility. On appeal, defendant argues:

<u>POINT I</u>

THE DEFENDANT [WAS] DENIED HIS RIGHT TO A FAIR TRIAL AS A RESULT OF TESTIMONY ELICITED BY THE STATE INFERENTIALLY CONNECTING THE DEFENDANT WITH PRIOR CRIMINAL CONDUCT. (PARTIALLY RAISED BELOW).

<u>POINT II</u>

THE PROSECUTOR'S SUMMATION EXCEEDED THE BOUNDS OF PROPRIETY. (PARTIALLY RAISED BELOW).

<u>POINT III</u>

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A NEW TRIAL SINCE THE JURY'S VERDICT WAS CLEARLY AGAINST THE WEIGHT OF THE EVIDENCE.

<u>POINT IV</u>

THE TRIAL COURT ERRED IN RULING THE DEFENDANT'S MOST RECENT CONVICTION, OCCURRING MORE THAN 10 YEARS PRIOR TO TRIAL, WAS ADMISSIBLE TO IMPEACH CREDIBILITY IN THE EVENT HE TESTIFIED.

We affirm.

These facts are taken from the one-day trial record. The State presented testimony from the arresting officer and

introduced photographs and documents.  Defendant did not testify; however, he presented the testimony from three fact witnesses.

On January 15, 2015, at 6:18 a.m., Seaside Heights Police Patrolman Douglas Roemmele received a call regarding a single-car accident at the traffic circle where a Route 37 east off-ramp meets Route 35 north.  He immediately reported to the scene, recalling the sun was just rising, and the presence of "heavy fog and a light mist" reduced visibility to approximately one quarter-mile.  Arriving at the circle, Officer Roemmele saw a four-door Volvo, stuck in a ditch, partially covered in sand.  Approaching the vehicle, Officer Roemmele noted a man on the ground digging out the vehicle's front tires.  Officer Roemmele recognized the man as defendant and asked him what happened.  Defendant stated "while he was negotiating the curve coming into town, he lost control of his vehicle and went over the curb."

Officer Roemmele confirmed defendant owned the car and inquired whether he needed medical attention.  Defendant stated he was fine, and was "just trying to get his car out" of the ditch.  Officer Roemmele then asked defendant if he were drinking and he replied, "no," he was just going home to Toms River.

Officer Roemmele identified photographs of the vehicle, taken during the police investigation showing the place of the accident, the position of defendant's vehicle, and its damage.  He further

3

explained he looked into the car through the passenger side window, and observed "documents and a bottle" placed on the front passenger seat. He testified there were no other individuals in the vehicle or the area, and defendant never mentioned another person was driving the car.

On cross-examination, Officer Roemmele was questioned about his official report, written a couple days after the accident. He confirmed his recorded observations of defendant's condition that morning. Specifically, he observed defendant "swaying from side to side," noted "he smelled of alcohol," and "seemed totally baffled when . . . told . . . he was in Seaside Heights." Officer Roemmele suspected defendant was intoxicated and administered field sobriety tests. As defendant attempted to perform the field sobriety test, Officer Roemmele noticed "he had watery eyes" that were "bloodshot" and "droopy eyelids." Defendant failed the roadside sobriety tests and was arrested. At the Seaside Heights police station, Officer Roemmele administered two additional psycho-motor tests: the walk and turn, and one-legged stand tests, both of which defendant was unable to perform because he could not maintain his balance and continued to sway. Defendant registered a .17 blood alcohol concentration.

At trial, the State admitted defendant's driver's abstract, which reflected prior municipal convictions for driving under the

influence of alcohol or drugs, N.J.S.A. 39:4-50, on November 10, 2004; driving while intoxicated in a school zone, N.J.S.A. 39:4-50(g), on August 18, 2006; and driving under the influence of alcohol or drugs, on March 24, 2011. This last conviction resulted in a ten-year suspension of defendant's driving privileges.

In his case, defendant called Christopher Foglio, whom he met two years earlier at a Seaside Heights bar. Christopher testified that on the night of the accident, he met defendant at his residence in Toms River and drove defendant's car into Seaside Heights. Christopher stated defendant was "pretty trashed" at the time of the accident. Further, Christopher admitted he was "high" after using heroin, but considered he was more "functional" than defendant. Christopher insisted he left the scene around 4:00 a.m., two hours prior to Officer Roemmele's arrival and walked over the bridge to a Wawa on Route 37, then called his brother to pick him up. Although he promised defendant he would return with help, Christopher stated he never actually intended to return because an outstanding warrant and the suspension of his driver's privileges could subject him to arrest.[1]

---

[1] Despite his license suspension, Christopher could not be charged under N.J.S.A. 2C:40-26(b), as was defendant, because he had no prior DUI convictions.

Two weeks after the accident, Christopher appeared at Seaside Heights Municipal court and "tried to tell the person downstairs that it was me," that was driving, but "they said there's nothing they could do." Christopher also "wrote a letter and got it notarized" attesting to his role in the accident.

Anthony Foglio, Christopher's brother, also testified. Anthony was home when Christopher left for defendant's house. Christopher returned with defendant and asked Anthony if he wanted to go to out. Anthony declined, and the pair left with Christopher behind the wheel. Anthony also related the telephone call he received from Christopher, who asked to be picked up at the Wawa on Route 37.

John Pascoe, a twenty-year friend of defendant, also testified. Pascoe was in defendant's home the morning of January 20, 2014, when Christopher came over at "pre-dawn," noting it was dark. Pascoe gave defendant forty dollars for cigarettes, "thinking they were coming back." Pascoe testified Christopher was driving and defendant sat in the passenger seat, when the pair left but did not return.

The jury's verdict was unanimous. Prior to sentencing in this matter, defendant pled guilty to the motor vehicle offense of driving while intoxicated. This appeal ensued.

On appeal, defendant first cites N.J.R.E. 404(b), and argues he was denied a fair trial because the judge overruled his objection to Officer Roemmele's testimony stating he recognized defendant, arguing this testimony suggested to the jury defendant was engaged in prior criminal conduct. At side-bar, after objection, the trial judge ordered the recognition testimony limited to a simple "yes or no." The prosecutor proceeded and asked: "Did you recognize this individual?" the answer was affirmative.

We have reviewed the arguments in light of the record and applicable law. We are not persuaded.

When we review a trial court's evidentiary rulings, we determine whether the judge abused his or her discretion. See, e.g., State v. Harris, 209 N.J. 431, 439 (2012); State v. Gillispie, 208 N.J. 59, 84 (2011); State v. Marrero, 148 N.J. 469, 483-84 (1997). Here, defendant maintains the judge erroneously admitted other crimes evidence, which is guided by N.J.R.E. 404(b).[2] The rule is one of exclusion rather than one of inclusion.

---

[2] N.J.R.E. 404(b) states:

> Except as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may

Gillispie, supra, 208 N.J. at 85. By its very nature, other crimes evidence is inflammatory and capable of prejudicing the jury against a defendant. Id. at 85. Evidence suggesting a defendant has been involved in past criminal activity is "fraught with danger and [can] create[] an unfair risk that defendant might be convicted, not by the evidence in the case for which he is on trial, but by the virtue of his prior criminal conduct." State v. Mays, 321 N.J. Super. 619, 632 (App. Div.), certif. denied, 162 N.J. 132 (1999). Therefore, a prosecutor may not pursue a line of questioning which places before the jury innuendo evidence which the State cannot properly present through direct testimony. See State v. Williams, 226 N.J. Super. 94, 103 (App. Div. 1988). Additionally, trial judges must be careful to limit such evidence, admitting only what is necessary to prove a disputed fact. See State v. Stevens, 115 N.J. 289, 303 (1989). The rule's design is to protect a defendant's guarantee to a trial by an impartial jury, U.S. Const. amends. VI, XIV; N.J. Const. art. 1, ¶ 10, which "goes to the very essence of a fair trial." State v. Bey, 112

---

be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

N.J. 45, 75 (1998) (quoting State v. Williams, 93 N.J. 39, 60 (1983)).

Examining the challenged testimony elicited by Officer Roemmele, we cannot agree N.J.R.E. 404(b) was implicated. The State asserted it was necessary to explain why Officer Roemmele did not ask the man he encountered digging out the damaged Volvo for identification. The brief testimony was as follows:

> [Prosecutor] Officer, you approached. There was an individual lying on the ground. He stood up. Did you recognize this individual?
>
> [Officer Roemmele] Yes.
>
> Q   And you were able to identify this person. Is that correct?
>
> A   Correct.
>
> Q   And you actually, if you saw this person again today you would recognize him. Correct?
>
> A   Yes.
>
> Q   What was the name of the person that you saw?
>
> A   Anthony.
>
> Q   And do you know his last name?
>
> A   Auriemma.

An officer's recognition of a defendant does not immediately invoke N.J.R.E. 404(b). See State v. Love, 245 N.J. Super. 195, 197-98 (App. Div.) (concluding evidence rule 55, the predecessor

to N.J.R.E. 404(b), was inapplicable when an investigator testified on cross-examination he previously interviewed the defendant in a homicide investigation), certif. denied, 126 N.J. 321 (1991); State v. Ramos, 217 N.J. Super. 530, 537-38 (App. Div.) (finding an officer's testimony that he was familiar with the defendant did not "prejudice the defendant by implying that he had committed previous criminal acts or was otherwise disposed toward criminal behavior"), certif. denied, 108 N.J. 677 (1987).

The limited exchange recited contains no suggestion implying defendant was a criminal or had a criminal past. In fact, earlier, in response to a different question, Officer Roemmele stated how small the island was. In light of the brief comments and after examining their content in the context of the testimony, we find defendant's argument is unfounded. We reject any suggestion the officer's statement of recognition supported an inference by jurors defendant had been involved in prior criminal activity or denied defendant a fair trial.[3]

Defendant next maintains the prosecutor's summation breached the acceptable bounds of propriety requiring a new trial. Because

---

[3]    Defendant relies on State v. Tilghman, 345 N.J. Super. 571 (App. Div. 2001), which involved police testimony regarding the insertion of a defendant's photograph in a photo array based on the victim's description of the perpetrator, which was found to be prejudicial. Id. at 578. Tilghman's holding is distinguishable from the facts, and defendant's reliance is misplaced.

defense counsel did not object to the State's closing, we must consider his argument that the prosecutor engaged in misconduct under the plain error rule. See R. 1:7-2; R. 2:10-2; see also State v. Macon, 57 N.J. 325, 336-37 (1971). "Under that standard, '[a] reviewing court may reverse on the basis of unchallenged error only if it finds plain error clearly capable of producing an unjust result.'" State v. Bunch, 180 N.J. 534, 541 (2004) (alteration in original) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)). In addition, it is "fair to infer from the failure to object" that "in the context of the trial the error was actually of no moment." State v. Ingram, 196 N.J. 23, 42 (2008) (quoting State v. Nelson, 173 N.J. 417, 471 (2002)).

When reviewing a prosecutor's comments to a jury, a well-settled principle is the primary duty of the prosecutor is "not to obtain convictions but to see that justice is done." State v. Ramseur, 106 N.J. 123, 320 (1987). Prosecutors' conduct must always comport with principles of fundamental fairness.

> Prosecutors are expected to make a vigorous and forceful closing argument to the jury, and are afforded considerable leeway in that endeavor. Nevertheless, there is a fine line that separates forceful from impermissible closing argument. Thus, a prosecutor must refrain from improper methods that result in wrongful conviction, and is obligated to use legitimate means to bring about a just conviction.

11

> [Ingram, supra, 195 N.J. at 43 (citation omitted).]

Bluntly, while a prosecutor may "strike hard blows, he [or she] is not at liberty to strike foul ones." State v. Wakefield, 190 N.J. 397, 436 (2007) (quoting Berger v. United States, 292 U.S. 78, 88, 55 S. Ct. 529, 633, 79 L. Ed. 2d 1314, 1321 (1935)). Claimed errors are not considered in isolation, but viewed in the context of the entire trial. State v. Negron, 355 N.J. Super. 556, 576 (App. Div. 2002). Reversal is justified when the comments are "clearly and unmistakably improper" and "substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Papasavvas, 163 N.J. 565, 625 (2000) (citing State v. Timmendequas, 161 N.J. 515, 575-76 (1999)).

Comments identified by defendant as improper include the prosecutor's reiteration of Officer Roemelle's recognition of defendant, stating "You also heard him say I knew him. I knew it was Anthony, saw him, he was trying to dig out his car." Also, defendant argues the prosecutor mischaracterized Officer Roemelle's testimony regarding the condition of defendant's car, as a way to refute his claim he was the passenger.

We have considered and rejected defendant's claim of prejudice resulting from the recognition testimony. R. 2:11-

3(e)(2). Regarding the second comment, we conclude it was harmless.

When discussing Officer Roemmele observations as he looked into the interior of defendant's vehicle, to refute defendant's claim he was not driving, the prosecutor stated:

> Now, remember what Officer Roemmele said. What I tell you isn't evidence. Your recollection controls, but Officer Roemmele said I could see into the car. There was a whole bunch of stuff on the passenger seat. There was a whole b[]unch of stuff on the passenger seat. I think he said documents, <u>I think he said it looked like it was trash all over the passenger seat.</u> There was no one in that seat. How could there have been? There was trash all over the passenger seat. There was one person in that car[:] Anthony Auriemma.
>
> [(Emphasis added).]

Cases requiring reversal include misstatements of material facts. <u>State v. McGuire</u>, 419 <u>N.J. Super.</u> 88, 148 (App. Div. 2011) (concluding it was improper speculation by the prosecutor to advance an unsupported theory that body parts had been refrigerated).

In <u>State v. Wilson</u>, 128 <u>N.J.</u> 233, 242 (1992), the Supreme Court found the prosecutor's unsupported suggestion a witness was "part of" a murder "improper," but, "in light of defendant's failure to object, and given [the] testimony, the impropriety does not rise to the level of reversible error." <u>Wilson</u>, <u>supra</u>, 128

N.J. at 242.  We reach the same conclusion here.  Although we agree Officer Roemmele did not state there was "trash all over" defendant's passenger's seat, we nevertheless reject the notion this characterization "substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense."  Papasavvas, supra, 163 N.J. at 625 (citing Timmendeques, supra, 161 N.J. at 575-76).

Defendant raises another evidential challenge regarding the use of prior convictions in cross-examination, if defendant chose to testify.  During pre-trial motions, the judge permitted use of an April 2005 third-degree eluding conviction, in a sanitized form, for impeachment purposes.  Reciting his reasoning, the judge identified the third-degree eluding charge was the result of a plea bargain, the conviction fell "barely outside the 10-year guideline[], which does not impose an absolute prohibition, and "the nature of the crime itself indicates to the [c]ourt that that should be allowed to be used by the State if the [d]efendant were to take the stand."  Defendant believes the ruling, which rests in the discretion of the trial judge, see State v. Sands, 76 N.J. 127, 144 (1979), was erroneous.

Directly related to the remoteness of convictions, N.J.R.E. 609(b)(1) states: "[i]f, on the date the trial begins, more than ten years have passed since the witness's conviction for a crime

. . . evidence of the conviction is admissible only if the court determines that its probative value outweighs its prejudicial effect . . . ."  Therefore, a judge must consider the date of the prior conviction and the date of the current trial.

A conviction falling outside the defined ten-year period may, nevertheless, be admitted to attack a defendant's credibility, if the probative value outweighs any prejudicial effect.  <u>N.J.R.E.</u> 609(b)(1).  A judge is guided by several considerations discussed in <u>Sands</u>:

> The key to exclusion is remoteness. Remoteness cannot ordinarily be determined by the passage of time alone.  The nature of the convictions will probably be a significant factor.  Serious crimes, including those involving lack of veracity, dishonesty or fraud, should be considered as having a weightier effect than, for example, a conviction of death by reckless driving.  In other words, a lapse of the same time period might justify exclusion of evidence of one conviction, and not another.  The trial court must balance the lapse of time and the nature of the crime to determine whether the relevance with respect to credibility outweighs the prejudicial effect to the defendant.  Moreover, it is appropriate for the trial court in exercising its discretion to consider intervening convictions between the past conviction and the crime for which the defendant is being tried.  When a defendant has an extensive prior criminal record, indicating that he has contempt for the bounds of behavior placed on all citizens, his burden should be a heavy one in attempting to exclude all such evidence.  A jury has the right to weigh whether one who repeatedly

refuses to comply with society's rules is more likely to ignore the oath requiring veracity on the witness stand than a law abiding citizen. If a person has been convicted of a series of crimes through the years, then conviction of the earliest crime, although committed many years before, as well as intervening convictions, should be admissible.

[Sands, supra, 76 N.J. at 144-45.]

The Court later adopted these factors in the 1993 revision of our evidence rules. State v. Harris, 209 N.J. 431, 442 (2012). In evaluating the admissibility of prior convictions that are more than ten years old, the court must apply N.J.R.E. 609(b)(2), which states:

In determining whether the evidence of a conviction is admissible under Section (b)(1) of this rule, the court may consider:

(i) whether there are intervening convictions for crimes or offenses, and if so, the number, nature, and seriousness of those crimes or offenses,

(ii) whether the conviction involved a crime of dishonestly, lack of veracity, or fraud,

(iii) how remote the conviction is in time,

(iv) the seriousness of the crime.

Here, although elaboration of the specific findings made under N.J.R.E. 609(b)(1) and (2) would have aided our review, we are able to affirm the determination as the record contains

sufficient reasons to support the use of defendant's 2005 conviction.

In weighing the totality of all circumstances, the trial judge considered the plea was mere months beyond the ten-year limits in N.J.R.E. 609(b)(1), the offense was a significant one for which defendant was given a four-year prison sentence, and the offense reflects evasion to defeat arrest. We do not agree the judge abused his discretion in permitting use of this prior conviction.

Defendant also argued the judge improperly denied his motion for a new trial, when the verdict was against the weight of the State's circumstantial evidence. Having reviewed the record, it is clear the verdict turned on the jury's assessment of the witnesses' credibility. Because reasonable minds might accept the State's evidence presented by Officer Roemmele, which supported the elements of the offense charged, we rejects defendant's argument.

A trial judge's ruling denying a motion for a new trial will be reversed only if it "clearly appears that there was a miscarriage of justice under the law." R. 2:10-1. The Supreme Court emphasizes the trial court's role as fact-finder and the high burden a defendant must meet:

The aim of the review at the outset is rather to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record. This involves consideration of the proofs as a whole; the appraisal is not confined simply to those offered by the plaintiff, for the question is not simply whether there was enough evidence to withstand a defense motion at the end of the plaintiff's case or of the entire case. When the reviewing court is satisfied that the findings and result meet this criterion, its task is complete and it should not disturb the result, even though it has the feeling it might have reached a different conclusion were it the trial tribunal. That the case may be a close one or that the trial court decided all evidence or inference conflicts in favor of one side has no special effect.

[State v. Johnson, 42 N.J. 146, 162 (1964).]

It is clear, the jury did not find the testimony of defendant's witnesses credible, but chose to accept the reasonable conclusions drawn from the State's circumstantial evidence. "That the case may be a close one or that the trial court decided all evidence or inference conflicts in favor of one side has no special effect." Ibid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-1399-15T3