**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2137-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ROE N. WRIGHT, a/k/a
ROENINO WRIGHT,

    Defendant-Appellant.

_____

Submitted May 8, 2018 — Decided June 14, 2018

Before Judges Yannotti and Carroll.

On appeal from Superior Court of New Jersey,
Law Division, Salem County, Indictment No.
15-04-0234.

Joseph E. Krakora, Public Defender, attorney
for appellant (Margaret McLane, Assistant
Deputy Public Defender, of counsel and on the
briefs).

John T. Lenahan, Salem County Prosecutor,
attorney for respondent (David M. Galemba,
Assistant Prosecutor, of counsel and on the
brief).

PER CURIAM

Defendant Roe N. Wright was tried before a jury and found guilty of second-degree possession of a firearm without a permit, contrary to N.J.S.A. 2C:39-5(b). Defendant appeals from the judgment of conviction dated September 27, 2016. We affirm.

I.

Defendant was charged under Salem County Indictment No. 15-04-0234 with possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a), and possession of a firearm without first having obtained a permit to carry same, N.J.S.A. 2C:39-5(b). Ojuwan Jenerette also was charged under the indictment with various drug offenses, but defendant's charges were severed for trial. Defendant filed motions to suppress the statement he provided to the law enforcement officers and the handgun.

At the hearing on defendant's motion to suppress his statement, James Gillespie, an investigator in the Salem County Prosecutor's Office (SCPO), testified that in the early morning hours of January 23, 2015, he and police officers from the Salem City Police Department (SCPD) entered a room at a motor lodge to execute a search warrant. Defendant, Jenerette, J.P., and J.P.'s two children were in the room and sleeping.[1] Gillespie handcuffed

---

[1] We refer to J.P. by her initials to protect her privacy and the privacy of her children.

and detained the adults. Gillespie said defendant did not appear or smell intoxicated.

Gillespie placed defendant in handcuffs and searched him. Gillespie also "searched the area where [he] found [defendant]," which included a lounge chair that defendant had been sleeping on. Gillespie found "a revolver near the edge of the chair," "[u]nder the cushion on the left-hand side." Gillespie said defendant could easily have reached the revolver. In the room, the officers also found marijuana and cocaine. At the scene, Jenerette admitted the drugs in the room were his, but no one admitted to ownership of the firearm.

Defendant, Jenerette, and J.P. were transported to the SCPD. While Gillespie was fingerprinting and photographing the suspects, "they asked collectively what they were being charged with." Gillespie explained that because everything was found in the common area of the room, they were all going to be charged with narcotics and weapons offenses.

Gillespie told the suspects that if anyone wanted to take ownership of either the drugs or the gun, he would take a recorded statement from that person and only that person would be charged. Jenerette provided a statement indicating that he owned the drugs, and defendant provided a statement admitting to ownership of the gun. On cross-examination, Gillespie denied that he told defendant

that if J.P. was charged with possession of the weapon, she would likely lose custody of her children.

Defendant testified that on the morning of January 23, 2015, he was at the motor lodge with Jenerette, J.P., and J.P.'s children. He claimed he had been drinking liquor from about 7:00 p.m. on the previous evening until about 1:00 a.m. of the following day. Defendant said he arrived at the room around 3:00 a.m., went to the bathroom, "jumped in the chair," and fell asleep. He stated that he woke up when the police "raided" the room and said they had a search warrant for Jenerette.

Defendant further testified that he heard the officers say they found a gun. The officers said Jenerette had admitted ownership of the drugs. The officers transported defendant, Jenerette, and J.P. to the police station and said they were going to charge all of them because no one had admitted ownership of the gun. Defendant testified that he told the officers it was not his gun.

He further testified that one of the officers stated that if J.P. was charged "she will lose her kids." The officer asked defendant if he wanted that to happen. Defendant said he did not want that to happen because he had been in the custody of the

Division of Youth and Family Services (Division)[2] for thirteen years and he knew "how that felt." He decided to claim ownership of the gun.

The trial judge determined that defendant's statement would not be suppressed. The judge noted that he had listened to the audiotape of the statement, which was admitted into evidence. As indicated on the tape, defendant had been informed of his Miranda rights,[3] and he indicated that he understood his rights. Defendant then signed the form waiving his Miranda rights. The judge found that there was no indication that defendant did not know what he was doing at that time.

The judge also noted that Gillespie had testified he did not smell any liquor and there was nothing to indicate that defendant was intoxicated. The judge stated that defendant claimed he took responsibility for the gun so that J.P. would not be charged. According to the judge, this indicated that defendant was someone who knew exactly what he was doing. According to the judge, defendant was willing to "manipulate the system" to obtain "a certain goal."

---

[2] The Division is now known as the Division of Child Protection and Permanency.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

The judge found that Gillespie's testimony was more credible than defendant's testimony. The judge stated that he did not believe defendant, noting that he had "much to gain" from presenting testimony that was not true. The judge found, however, that even if defendant had been told J.P.'s children would "end up in" the Division's custody, that did not render his statement involuntary.

The judge also considered defendant's age, education, and intelligence, and noted that there was no evidence defendant did not know what was going on when he provided the statement. The judge gave slight weight to the fact that defendant had a prior criminal record. The judge pointed out that defendant had been informed of his Miranda rights. The judge observed that defendant had been through the criminal justice system before as a juvenile and adult, and he "understood what was happening" when he gave his statement.

The judge further found that defendant had not been detained for a lengthy period of time before he gave his statement, and the questioning was neither repetitious nor prolonged. The judge noted there was no evidence defendant had been punished physically or was exhausted. The judge concluded, based on the totality of the circumstances, that the State had proven beyond a reasonable doubt

that defendant knowingly and voluntarily gave his statement to the police.

Thereafter, the trial judge conducted an evidentiary hearing on defendant's motion to suppress the handgun. At that hearing, Richard Ware, an investigator in the SCPO, testified about the execution of the search warrant at the motor lodge on January 23, 2015. Defendant also testified.

The judge denied that motion, finding that Ware's testimony was credible. The judge found that the officers knocked on the door to the room and announced their presence. When no one answered the door, the officers breached the door and entered the room. The judge found that the seizure of defendant was "proper and necessary" in order to ensure the officers' safety and the integrity of the scene, and to ensure that any contraband was not damaged or destroyed.

The judge determined that the initial seizure was not an arrest. The judge found that the search was reasonable and, while the warrant authorized a search for CDS, the officers were entitled to look anywhere CDS could be located. The judge found that Gillespie properly recovered the handgun, and at that point, the officers had probable cause to arrest defendant.

The judge noted that the gun was found in the cushion of the chair where defendant had been sleeping. Defendant was the only

person with access to the gun, and there were no facts indicating that the gun belonged to someone else.

The court then granted the State's motion to dismiss the count in which defendant was charged with possession of a weapon for an unlawful purpose. Defendant was later tried before a jury on the remaining charge, unlawful possession of a weapon. Gillespie and Ware testified for the State, and defendant testified in his own defense. The jury found defendant guilty of the charge. Thereafter, the judge sentenced defendant to seven years of incarceration, with a forty-two-month period of parole ineligibility. This appeal followed.

On appeal, defendant argues:

> POINT I
> THE TRIAL COURT ERRONEOUSLY FAILED TO SUPPRESS DEFENDANT'S STATEMENT.
>
> POINT II
> THE COURT'S EXCLUSION OF ANY TESTIMONY ABOUT DEFENDANT'S EXPERIENCE WITH [THE DIVISION] VIOLATED DEFENDANT'S CONSITUTIONAL RIGHT TO PRESENT A DEFENSE AND REQUIRES REVERSAL OF HIS CONVICTION.
>
> POINT III
> THE SEVEN-YEAR SENTENCE WITH [FORTY-TWO] MONTHS OF PAROLE INELIGIBLITY IS MANIFESTLY EXCESSIVE.

II.

As noted, defendant contends the trial judge erred by failing to suppress his statement. He argues that the officer conducted a

"two-stage interrogation." According to defendant, the officer first conducted an unrecorded custodial interrogation without informing him of his Miranda rights. Defendant contends that after reading the Miranda warnings, the officer then conducted a second, recorded interrogation, but failed to inform him that his prior incriminating statement could not be used against him. Defendant contends the trial court failed to address this "two-staged interrogation." He argues that this "two-stage interrogation technique" led to the recorded incriminating statement, which should have been suppressed.

We note that defendant never argued in the trial court that his statement should be suppressed because the officer allegedly used a "two-stage interrogation" technique. We conclude, however, that the trial court correctly decided to deny the suppression motion.

In reviewing a trial court's ruling on a motion to suppress, we must defer to the court's factual findings provided they are supported by sufficient credible evidence in the record. State v. Scriven, 226 N.J. 20, 32-33 (2016) (citing State v. Elders, 192 N.J. 224, 243-44 (2007)). Our deference to the trial court's factual findings is especially appropriate when those findings "are substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing

court cannot enjoy." State v. Gamble, 218 N.J. 412, 424-25 (2014) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). However, we owe no deference to the trial court's ruling on an issue of law, which we review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

"[T]o safeguard a suspect's Fifth Amendment right against self-incrimination, confessions obtained during custodial interrogations are inadmissible as evidence unless the defendant has been advised of his or her constitutional rights." State v. Hubbard, 222 N.J. 249, 265 (2015) (quoting Miranda, 384 U.S. at 492). The term "custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 265-66 (quoting Miranda, 384 U.S. at 444). "[I]f the questioning is simply part of an investigation and is not targeted at the individual because she or he is a suspect, the rights provided by Miranda are not implicated." Id. at 266 (quoting State v. Timmendequas, 161 N.J. 515, 614-15 (1999)).

Miranda's protections extend only to words or actions of law enforcement officers "reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). "[B]ooking procedures and the routine questions associated therewith are ministerial in nature and beyond the right to remain

silent. Even unexpected incriminating statements made by in-custody defendants in response to non-investigative questions by the police without prior <u>Miranda</u> warnings are admissible." <u>State v. M.L.</u>, 253 N.J. Super. 13, 21 (App. Div. 1991) (citations omitted).

In <u>State v. Mallozzi</u>, 246 N.J. Super. 509, 511 (App. Div. 1991), the defendant was arrested and informed of his pending charges during the booking process, which included fingerprinting and photographing. Defendant then "made certain statements which were . . . incriminating" before <u>Miranda</u> warnings were read to him. <u>Ibid.</u> The trial court denied the defendant's motion to suppress the statements that he made during the booking process. <u>Id.</u> at 513. On appeal, we held "there was clearly no questioning, nor can it be fairly concluded that [the] defendant was subjected to the functional equivalent of questioning." <u>Id.</u> at 516.

We further explained that "informing [the] defendant of the charges against him was not designed or done to elicit any type of response from defendant and thus places [the officer's] actions outside the <u>Innis</u> definition of 'interrogation.'" <u>Ibid.</u> Rather, the officer "was merely providing [the] defendant information to which he was otherwise entitled." <u>Ibid.</u> Accordingly, we affirmed the trial judge's denial of the defendant's motion to suppress the statements that he made while being processed. <u>Id.</u> at 518.

As was the case in <u>Mallozzi</u>, Gillespie spoke to defendant and the other two suspects while he was processing them at the police station. He stated that the person who admitted ownership of the gun would be the only person charged with a weapons offense. This statement was not, however, part of an interrogation, nor was it designed to elicit an incriminating response from defendant. Defendant said the gun was his, he was informed of his <u>Miranda</u> rights, and he provided a recorded statement.

We are convinced there is sufficient credible evidence in the record supporting the trial judge's findings of fact. We also conclude that the judge's decision to deny defendant's motion to suppress his statement was legally correct.

III.

Next, defendant argues that the trial judge erred by precluding him from testifying about his experience while in the Division's custody. He contends the judge's ruling denied him his constitutional right to present a defense. We disagree.

A trial court's evidentiary rulings are "entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." <u>State v. Marrero</u>, 148 N.J. 469, 484 (1997); <u>see also</u> <u>Verdicchio v. Ricca</u>, 179 N.J. 1, 34 (2004) (holding that admissibility of evidence falls within the broad discretion of the trial judge). The court's evidentiary

12

ruling must be upheld on appeal "unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide of the mark that a manifest denial of justice resulted." State v. Carter, 91 N.J. 86, 106 (1982).

Like any other evidence presented at trial, a witness's testimony must be relevant; that is, it must "hav[e] a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. Once deemed relevant, the evidence is admissible "[e]xcept as otherwise provided in [the evidence] rules or by law." N.J.R.E. 402. Evidence "may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Brenman v. Demello, 191 N.J. 18, 30 (2007) (quoting N.J.R.E. 403).

During direct examination, defendant's attorney asked him why he had claimed possession of the gun. Defendant said he did so to prevent the Division from taking custody of J.P.'s children. He explained, "I was in [the Division] and I didn't want the kids to be in the system. I [was] in [the Division] from one to [thirteen] years old. I was sexually abused, physically abused, starved and separated from my brother."

The assistant prosecutor objected to this testimony and requested to be heard outside the presence of the jury. At sidebar, the prosecutor asserted that defendant's testimony was "getting a little out of hand." The prosecutor noted that defendant had testified that he was sexually abused while in the Division's care, and the State had no way "to corroborate any of this information." The prosecutor argued that defendant's testimony regarding his experience with the Division should be excluded because it was clearly designed to elicit the sympathy of the jury, and the State could not challenge defendant's assertions.

Defense counsel responded by asserting that the testimony was addressed to defendant's "motivation as to why he claimed [ownership of] the [gun] . . . , [and] the[] jury needs to know why it is that he would confess to owning the gun if it wasn't true." The judge decided to strike defendant's comments from the record and instructed the jurors that they were not to consider the comments during their deliberations.

Defense counsel then continued his direct examination of defendant:

> [DEFENSE COUNSEL]: Okay. So how long were you in [the Division's] care?
>
> [DEFENDANT]: Thirteen years.
>
> [DEFENSE COUNSEL]: Thirteen years? And how would you evaluate your experience while in

14

[the Division's] care? Was it positive or negative?

[DEFENDANT]: It was the worst experience I ever had. Worst.

[THE STATE]: Objection

THE COURT: I'm going to overrule the objection. I find that that falls outside of the lines of what my ruling was.

[DEFENSE COUNSEL]: Thank you, Judge.

. . . .

[DEFENSE COUNSEL]: So I'm sorry; you said that your experience was?

[DEFENDANT]: The worst experience I ever had.

[DEFENSE COUNSEL]: Could you speak up a little bit, please?

[DEFENDANT]: It was the worst experience I ever had.

[DEFENSE COUNSEL]: And what you're characterizing as the worst experience you ever had, this endured for how long?

[DEFENDANT]: Thirteen years.

We are convinced the judge did not mistakenly exercise his discretion by limiting defendant in testifying about his experiences while in the Division's care. As noted, defendant testified that he accepted responsibility for the gun because he was concerned that if J.P. was charged with possession of the gun, the Division might take custody of her children. The judge allowed

defendant to testify that he had been in the Division's care and state three times that it was "the worst experience" he ever had.

The judge properly exercised his authority under N.J.R.E. 403 by precluding defendant from testifying that he had been sexually and physically abused, starved, and separated from his brother while in the Division's care. Detailed testimony about defendant's experience with the Division had little probative value. Moreover, the probative value of this testimony was substantially outweighed by the risk of undue prejudice to the State, and the likelihood that the jury would be misled and confused by the testimony.

Even if the court erred by limiting the testimony, the error is not grounds for reversal because it was harmless. State v. J.R., 227 N.J. 393, 417 (2017) (quoting State v. Macon, 57 N.J. 325, 337-38 (1971)). "Convictions after a fair trial, based on strong evidence proving guilt beyond a reasonable doubt, should not be reversed because of a technical or evidentiary error that cannot have truly prejudiced the defendant or affected the end result." State v. W.B., 205 N.J. 588, 614 (2011).

Here, defendant explained to the jury three times that his time under DYFS's care was the "worst experience" of his life. Furthermore, during closing arguments, defense counsel referenced defendant's experience while in the Division's care. Counsel argued that defendant only took responsibility for the gun because

he "feared greatly the prospect" that J.P.'s children would be taken away and "suffer the same fate" that he suffered.

The jury nevertheless found that the State had proven beyond a reasonable doubt that defendant unlawfully possessed the weapon. In light of the strong if not overwhelming evidence of defendant's guilt, it is unlikely the jury would have reached a different verdict if defendant had been allowed to provide more details concerning his experiences under the Division's care. We therefore conclude that even if the court's evidentiary ruling was erroneous, defendant was not prejudiced and the error had no effect upon the jury's ultimate determination.

IV.

Defendant further argues that his sentence is manifestly excessive. As noted previously, the judge sentenced defendant to a seven-year prison term, with forty-two months of parole ineligibility.

When reviewing a trial court's sentencing determination, we apply a deferential standard of review. State v. Fuentes, 217 N.J. 57, 70 (2014). We must affirm the sentence if (1) the trial court followed the sentencing guidelines; (2) the court's findings of aggravating and mitigating factors were based on competent and credible evidence in the record; and (3) the resulting sentence is not clearly unreasonable so as to "shock the judicial

conscience." Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Here, the sentencing court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will reoffend); six, N.J.S.A. 2C:44-1(a)(6) (defendant's prior criminal record); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge found no mitigating factors.

Regarding aggravating factor three, the judge stated that although defendant was young, he already had one conviction for which he was on probation when he committed the instant offense. The judge reasoned that this was "certainly an indicator of someone that's going to commit another offense." With regard to aggravating factor six, the judge noted that defendant had convictions for "obstruction, [defiant] trespassing, and ha[d] a pending charge" for contempt at the time of his sentencing. Defendant also had a prior indictable conviction for resisting arrest for which he violated probation and received jail time. Regarding aggravating factor nine, the judge found that there was a "need to deter this defendant and others from violating the law." The judge addressed and determined that no mitigating factors applied.

On appeal, defendant argues that the judge erred by failing to find mitigating factors one, N.J.S.A. 2C:44-1(b)(1) (defendant's conduct did not cause or threaten serious harm); two,

N.J.S.A. 2C:44-1(b)(2) (defendant did not contemplate that his conduct would cause or threaten serious harm); and seven, N.J.S.A. 2C:44-1(b)(7) (defendant has no prior history of delinquency or criminal activity).

Defendant asserts that although he was convicted of possession of a handgun, he did not cause or intend to cause any harm. He states he does not have an extensive prior record, and this is his first prison sentence. He argues that any sentence longer than the minimum five years is "unnecessary."

Here, the judge found that mitigating factors one and two did not apply. The judge stated that "[t]he very nature of possession of a handgun is the contemplation [of] or the threat of serious harm." The judge also found that mitigating factor seven was not applicable because defendant has a prior history of delinquency and criminal activity.

Thus, the judge followed the sentencing guidelines, and there is sufficient credible evidence in the record to support the court's findings regarding the aggravating and mitigating factors. The seven-year sentence, with forty-two months of parole ineligibility, is reasonable and does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-2137-16T3