246 N.J. Super. 509 (1991)
588 A.2d 389
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN VICTOR MALLOZZI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 1990.
Decided March 8, 1991.
*510 Before Judges MICHELS and GRUCCIO.
*511 Wilfredo Caraballo, Public Defender, attorney for appellant (Charles Novins, Assistant Deputy Public Defender, of counsel and on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Mark E. Bailey, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
Defendant John Victor Mallozzi was indicted by the Atlantic County Grand Jury on October 8, 1987, and charged with armed robbery, N.J.S.A. 2C:15-1 (count one), and a variety of other charges.[1]
On May 5, 1988, defendant was arrested in San Francisco on a fugitive warrant by agents of the Federal Bureau of Investigation (FBI), handcuffed and transported to a local FBI office for processing. During the booking process, which included fingerprinting and photographing, FBI Special Agent Walter E. Lamar informed defendant of the pending charges in Atlantic County. Defendant made certain statements which were, in a sense, incriminating. Agent Lamar testified at a pretrial hearing that no Miranda[2] warnings are given to those apprehended on fugitive warrants because no interrogation or interview takes place and that the agent is not familiar enough with the *512 charges in a local matter to conduct an effective investigation interview. Defendant's motion to suppress the statements which he made at the booking procedure was denied.
Following the denial of his suppression motion, defendant entered into a plea bargain agreement which provided that in exchange for his plea of guilty to armed robbery, the remaining 11 charges would be dismissed and defendant's sentence would be in the discretion of the court. Judge Perskie, after carefully articulating his reasons for sentencing, including defendant's criminal history,[3] sentenced defendant to an 18-year term with an 8-year parole disqualifier and a $100 Violent Crimes Compensation Board penalty.
On appeal, defendant contends:
1. Where defendant was intentionally not advised of his rights pursuant to Miranda and the fifth amendment to the United States Constitution, incriminating statements made by defendant subsequent to his arrest should be inadmissible at trial.
2. Defendant's sentence was manifestly excessive.
Defendant posits that the main issue to be addressed revolves around his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the extent to which defendant's rights may have been violated, including the FBI policy not to give Miranda warnings when apprehending a defendant on a fugitive warrant. The trial judge conducted a plenary hearing carefully addressing this issue, and also credited the testimony of Agent Lamar, the only witness who testified. No opposing testimony was produced.
Judge Perskie found that upon his arrest by Agent Lamar on a fugitive warrant, defendant was handcuffed and transported to police headquarters for eventual presentation to the San *513 Francisco Hall of Justice; that at no time was defendant given his rights under Miranda and its progeny, including its New Jersey progeny; that defendant was processed, i.e., fingerprinted and photographed and the necessary paperwork attendant to his arrest and notification of federal and New Jersey authorities were undertaken; and that defendant was advised of the nature of the New Jersey charges, i.e., sexual assault and kidnapping while armed. The judge also found that upon being advised of the charges during the booking process, defendant responded that he had a 50-50 chance of beating the charges and that every day he was free he considered an extra day; that defendant asked if the warrant for his arrest had been issued by the Newark or Philadelphia Office; that defendant commented that if he had been on the television show "America's Most Wanted," there was no place for him to hide; and that defendant asked for and received lunch and said that he did not want to discuss his case or respond to any questions. The judge then reviewed the purpose of the Miranda ruling and correctly observed that Miranda and its progeny clearly hold law enforcement agencies to a standard of conduct that enforces the constitutional mandates of the fifth and sixth amendments. He specifically excluded from consideration the State's proffer of a card found in defendant's wallet which apparently referred to a defendant's Miranda rights. He carefully articulated that when a defendant is arrested and in custody, any interrogation incident to that custody was required to be preceded by a valid and knowing waiver of defendant's right to remain silent and to refuse to answer any questions or make any statement. Next, he considered whether, in fact, there was an interrogation of defendant within the meaning of the cases interpreting Miranda and concluded that there was no interrogation. He found:
The statements were volunteered. And they were not in response to any word or any conduct by the police that was designed to have or that did have the practical effect of eliciting statements by the defendant.
In fact there was a dialogue. The statements were made after he was advised of the charges against him.

*514 But I am satisfied and conclude as a fact that the advising him of the charges against him if not itself affording him by way of information something to which he was entitled was not designed or done to elicit any type of response from the defendant.
I am satisfied that in fact there was no attempt manipulatively or directly by Special Agent Lamar to elicit any statements.
I am further satisfied that the defendant was aware of his circumstances and knew and understood the nature of his custodial situation and that the statements he made were voluntarily [sic] and not in reponse [sic] to any interrogation undertaken by the FBI.
For those reasons the motion to exclude the statements as being the product involuntarily or unknowing, whichever, of his rights to remain silent in the face of custodial interrogation is denied.
He ruled defendant's statements admissible. We agree with Judge Perskie and accept his findings based upon the testimony and his assessment of the credibility of the witness.
We first observe that the factual findings of a judge must be accorded great deference for it is he who hears the witness and is best able to judge the credence to be attached to the testimony. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). Here, that message is clear; the witness was credible and there was no interrogation. Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
Next, we turn our attention to Miranda, which, in sum, sets forth a balance between the rights of the government and those accused of criminal activity. In arriving at the balance, the Court required that a person in custody be advised of the rights guaranteed by the constitution. Miranda, supra, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706-07. Those rights require that a suspect in custody must be advised prior to interrogation that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney either retained or appointed." Id. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706-07. Our state law is consonant with that principle. See State v. Graves, 60 N.J. 441, 447, 291 A.2d 2 (1972); State v. Godfrey, 131 N.J. Super. 168, 175, 329 A.2d 75 (App.Div. 1974), aff'd, 67 N.J. 267, 337 A.2d 371 (1975). The safeguards of *515 Miranda "come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Innis, supra, 446 U.S. at 300-01, 100 S.Ct. at 1689-90, 64 L.Ed.2d at 307-08. Clearly, however, not all statements obtained by the police after taking a person into custody must be considered the product of interrogation. Id. at 299, 100 S.Ct. at 1688, 64 L.Ed.2d at 307. The definition of interrogation has been held to extend only to a police officer's words or actions that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301, 100 S.Ct. at 1689, 64 L.Ed.2d at 308; State v. Ramos, 217 N.J. Super. 530, 537, 526 A.2d 284 (App.Div. 1987) (footnotes omitted).
Defendant asserts that the actions of Agent Lamar constituted the functional equivalent of interrogation resulting in defendant's incriminating statements. As noted above, and as correctly pointed out by the State, for Miranda purposes, an interrogation is "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (emphasis supplied). Innis, supra, 446 U.S. at 301, 100 S.Ct. at 1690, 64 L.Ed.2d at 308; Ramos, supra, 217 N.J. Super. at 537, 526 A.2d 284 (footnotes omitted). The latter portion of the definition focuses primarily on the perceptions of the suspect, rather than the intent of the police. Innis, supra, 446 U.S. at 301, 100 S.Ct. at 1690, 64 L.Ed.2d at 308. In order to constitute interrogation, police conduct "must reflect a measure of compulsion above and beyond that inherent in the custody itself." Id. at 300, 100 S.Ct. at 1689, 64 L.Ed.2d at 307. Thus, booking procedures and the routine questions associated therewith are ministerial in nature and beyond the right to remain silent. United States ex rel. Hines v. LaVallee, 521 F.2d 1109, 1112-13 (2d Cir.1975), cert. denied sub nom. Hines v. Bombard, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976); State v. Cunningham, 153 N.J. Super. 350, 352, 379 A.2d 860 (App.Div. 1977). Moreover, *516 unexpected incriminating statements made by in-custody defendants in response to non-investigative questions by the police without prior Miranda warnings are admissible. LaVallee, supra, 521 F.2d at 1113; State v. Barnes, 54 N.J. 1, 6, 252 A.2d 398 (1969), cert. denied, 396 U.S. 1029, 90 S.Ct. 580, 24 L.Ed.2d 525 (1970); Ramos, supra, 217 N.J. Super. at 537, 526 A.2d 284.
Here, as in Innis, there was clearly no questioning, nor can it be fairly concluded that defendant was subjected to the functional equivalent of questioning. Innis, supra, 446 U.S. at 302, 100 S.Ct. at 1690, 64 L.Ed.2d at 309. As the trial judge found, Agent Lamar's informing defendant of the charges against him was not designed or done to elicit any type of response from defendant and thus places Agent Lamar's actions outside the Innis definition of "interrogation." See id. at 302, 100 S.Ct. at 1690, 64 L.Ed.2d at 309. Rather, Agent Lamar was merely providing defendant information to which he was otherwise entitled.
Defendant's next contentions are predicated on the assumption that Agent Lamar's actions constituted an interrogation triggering the Miranda protections. The first of these contentions suggests that normal Miranda case law analysis is inapplicable in light of the fact that such cases deal with statements elicited following Miranda warnings. Defendant contends that regardless of who arrests him, the reason for arrest and whether an interrogation occurred, he must be given his Miranda rights for any statement volunteered which will be used against him at trial. As no such warnings were administered, defendant concludes that a Miranda violation occurred. Defendant secondly contends that his actions did not constitute a waiver of his Miranda rights.
As the State notes, these suggestions beg the question in that consideration of either contention first requires that defendant be subject to interrogation as defined by Innis. As made abundantly clear above, the protections of Miranda do not attach upon mere custody, but upon custodial interrogation. *517 Hence, as no interrogation occurred, these protections do not apply here. In addition, we note that the statements made by defendant are not of the highly inculpatory type. The most inculpatory evidence which would have been produced at trial would likely have come from the victim, who, in her statement to police, stated that she was quite sure defendant was her attacker: "I know, I know it was him. I've seen him ten times in the last two weeks." Thus, even if the motion judge's ruling admitting defendant's innocuous utterances was in error, it was not clearly capable of producing an unjust result and should consequently be affirmed by an appellate court. R. 2:10-2.
We have carefully reviewed the sentence imposed and the reasons given and find the sentence in accord with the statutory provisions of N.J.S.A. 2C:44-1 to -7, the decisions of our Supreme Court and our decisions. We find nothing excessive in the sentence imposed and find no error in the judge's application of the sentencing guidelines and weighing process of aggravating and mitigating factors as set forth in State v. Roth, 95 N.J. 334, 368, 471 A.2d 370 (1984), and State v. Hodge, 95 N.J. 369, 378, 471 A.2d 389 (1984).
Here, Judge Perskie departed somewhat from the presumptive term of 15 years, but carefully articulated his finding that there was a preponderance of the aggravating factors set forth in N.J.S.A. 2C:44-1a over the mitigating factors listed in N.J.S.A. 2C:44-1b. State v. O'Connor, 105 N.J. 399, 407, 522 A.2d 423 (1987) (holding that the Code confers on the court the limited power to depart from these presumptive terms where it finds a "preponderance of aggravating factors or [a] preponderance of mitigating factors, as set forth in [N.J.S.A. 2C:44-1] a and b"); see State v. Martelli, 201 N.J. Super. 378, 383, 493 A.2d 70 (App.Div. 1985) (opining that "[t]o impose a longer term, the court must only be satisfied that the aggravating factors preponderate over the mitigating factors"); N.J.S.A. 2C:44-1f.
Judge Perskie also found that the aggravating factors substantially outweighed the mitigating factors and properly ordered a period of parole ineligibility. He clearly stated on the *518 record the reasons for imposing sentence, including the factual basis supporting his findings of particular aggravating factors affecting sentence, such as defendant's criminal history. State v. Kruse, 105 N.J. 354, 359-60, 521 A.2d 836 (1987). Since the judge carefully followed the sentencing guidelines and appellate decisions, we shall not second guess his decision. State v. Jabbour, 118 N.J. 1, 5, 570 A.2d 391 (1990). Our review of the sentencing record finds us in full accord with the sentence imposed but, even if we would have imposed a different sentence, we would not substitute our judgment for that of the sentencing judge. Id. at 6, 570 A.2d 391; State v. O'Donnell, 117 N.J. 210, 215, 564 A.2d 1202 (1989); see also State v. Jarbath, 114 N.J. 394, 401, 555 A.2d 559 (1989).
In sum, defendant was given a fair hearing and a proper determination of the issues raised. His sentence is fair, just and in accordance with law. Every defendant is entitled to fairness in the proceedings by the State, albeit not perfect justice. Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208, 215 (1973); State v. Biddle, 150 N.J. Super. 180, 183, 375 A.2d 283 (App.Div.), certif. denied, 75 N.J. 542, 384 A.2d 521 (1977).
Affirmed.
NOTES
[1] The indictment also charged defendant with possession of a handgun without a permit, N.J.S.A. 2C:39-5(b) (count two); possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4 (count three); kidnapping, N.J.S.A. 2C:13-1b(2) (count four) and N.J.S.A. 2C:13-1b(1) (count five); aggravated sexual assault, N.J.S.A. 2C:14-2a(3) (count six); aggravated sexual assault while armed, N.J.S.A. 2C:14-2a(4) (count seven); aggravated sexual contact, N.J.S.A. 2C:14-3b (count eight); possession of a handgun without a permit, N.J.S.A. 2C:39-5b (count nine); aggravated sexual contact, N.J.S.A. 2C:14-3b (count ten); hindering apprehension, N.J.S.A. 2C:29-3b(2) (count eleven); and possession of a weapon by a convicted person, N.J.S.A. 2C:39-7 (count twelve).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Defendant's contacts with the criminal justice system include the following convictions: on March 25, 1980, for possession of drug paraphernalia; on August 18, 1980, for theft under $200; on March 23, 1981, for burglary and theft; on September 24, 1982, for violation of probation; on January 21, 1981, for conspiracy to commit robbery; and on January 28, 1983, for weapon and drug offenses.