# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0906-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

M.A.P.,[1]

    Defendant-Appellant.

_____

Submitted May 6, 2019 – Decided May 23, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-02-0236.

Joseph E. Krakora, Public Defender, attorney for appellant (Jaime Beth Herrera, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Alanna M. Jereb, Assistant Prosecutor, on the brief).

---

[1] We use initials to protect the privacy of the victim.

PER CURIAM

A Hudson County grand jury indicted defendant M.A.P., charging him with sexually assaulting and endangering the welfare of his paramour's eleven-year-old daughter, X.M.  Following a hearing pursuant to N.J.R.E. 104(c), the judge granted the State's motion to admit defendant's statement to law enforcement authorities.  Thereafter, defendant pled guilty to first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), and the remaining five counts were dismissed pursuant to a negotiated plea agreement.

Defendant appeals, raising the following points for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN FAILING TO SUPPRESS [DEFENDANT]'S STATEMENT BECAUSE THE STATE DID NOT MEET ITS HEAVY BURDEN OF PROVING BEYOND A REASONABLE DOUBT THAT [DEFENDANT]'S WAIVER OF RIGHTS WAS KNOWING, INTELLIGENT AND VOLUNTARY.[2]
>
> A. The Introductory Remarks Made By The Detective during the Interrogation Were Misleading And

---

[2]   Defendant's plea agreement expressly reserved his right to appeal the admissibility of his confession.  See R. 3:9-3(f); see also State v. Knight, 183 N.J. 449, 470 (2005) (citation omitted) ("[A] defendant who pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea.").

2

Operated To Neutralize The Miranda[3] Warnings That Were Read To Defendant Immediately Thereafter.
(Not Raised Below)

B. The Detective's Failure to Ascertain [Defendant]'s Level of Education and Intelligence Resulted in her Administering the Miranda Rights Without Ensuring he Understood Them, Thereby Depriving him of the Opportunity to Make a Knowing, Intelligent Waiver of his Rights.

C. The State Failed to Establish that the Detective was Sufficiently Proficient in Spanish to Both Explain the Critically Important Aspects of Miranda, and to Ascertain Whether [Defendant] Understood the Rights he was Waiving or the Consequences of Doing so, and the State Failed to Establish that the Transcript of the Interrogation was an Accurate and True Translation produced by a Certified Translator.
(Not Raised Below)

D. The State Failed to Establish a Knowing and Intelligent Waiver when [the Detective] was Translating Critically Important Aspects of Miranda to [Defendant] but is not an Unbiased Interpreter.
(Not Raised Below)

POINT II

[DEFENDANT]'S GUILTY PLEA MUST BE VACATED BECAUSE THE TRIAL COURT PROVIDED MISLEADING INFORMATION AND EFFECTIVELY DENIED HIM HIS RIGHT TO SPEAK WITH AN IMMIGRATION ATTORNEY

---

[3]  Miranda v. Arizona, 384 U.S. 436 (1966).

A-0906-17T3

ABOUT THE CONSEQUENCES OF PLEADING
GUILTY.
(Not Raised Below)[4]

We reject these arguments and affirm.

I.

A.

We first consider defendant's overlapping arguments that his <u>Miranda</u> waiver was not made knowingly, intelligently, and voluntarily. In doing so, we derive the pertinent facts from the record developed at the motion hearing. Detective Paola Bolivar of the Hudson County Prosecutor's Office (HCPO) was the sole witness to testify at the hearing. The State also moved into evidence, without objection, the waiver form, video-recorded statement, and a transcript of defendant's statement, which had been translated from Spanish to English.

After X.M. and her mother reported defendant's sexual misconduct to the HCPO's Special Victim's Unit (SVU), Bolivar scheduled an interview with defendant. When he voluntarily responded to the SVU, defendant was not under arrest.

---

[4] Defendant's point heading states this argument was "Partially Raised Below." As defendant's merit brief notes, however, his plea counsel raised issues other than immigration in support of his motion to vacate his guilty plea. Those issues are not renewed on appeal.

Because defendant indicated he did not speak English, Bolivar conducted the interview in Spanish. Defendant understood and spoke Spanish, but was unable to read the language. Bolivar testified that defendant had no problem understanding her questions. Defendant immediately acknowledged he was aware of X.M.'s allegations. During the course of responding to preliminary questions about his pedigree, defendant could not recall his social security number, but produced his card.

Bolivar administered Miranda warnings to defendant by reading each warning aloud in Spanish from a preprinted waiver of rights form. Defendant verbally indicated he understood his rights, initialed each right and signed the form. Defendant admitted he "touched" X.M.'s breast and "private part" with his mouth "like adults, . . . [b]ut that was the only time in [his] life." The entire interview was conducted in approximately twenty minutes; defendant was arrested immediately thereafter.

At the conclusion of the hearing, the judge rendered a short oral decision, granting the State's motion. The judge reasoned:

> [Defendant] was not in custody when he first arrived [at the SVU], number one; he was advised of his Miranda rights; he was advised of his right to remain silent, his right to have an attorney. He was given the safeguards that the Constitution requires.

5

Although he said that he could not remember -- or, [had a] short memory regarding his [s]ocial [s]ecurity . . . number . . . he had the wherewithal and the understanding to provide the card. So, the [c]ourt finds that, although he may not have been able to remember the number, which is not unusual, he did understand.

The [c]ourt finds that when he responded to the interview, he acknowledged his rights, said he understood his rights, signed the rights and waiver statement. And although he could not read or write in English or in Spanish, he did initial the various part[s] of the waiver statement indicating that he understood. The [video] recording of the waiver demonstrates that . . . defendant's statement was completely knowing and voluntary.

Accordingly, the judge concluded defendant "was not coerced or forced to make a statement and that he voluntarily, knowingly, and intelligently waived his right to remain silent."

B.

We commence our analysis with well-established legal principles, recognizing we review the trial court's evidential ruling under an abuse of discretion standard. See Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008); see also State v. Gore, 205 N.J. 363, 382 (2011). After a testimonial hearing, we "defer to the trial court's factual findings because the trial court has the 'opportunity to

6

hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. S.S., 229 N.J. 360, 374 (2017) (citation omitted).

That deference extends to a trial court's determinations based on the review of a video, like here, because of the court's "experience and expertise in fulfilling the role of factfinder." Id. at 380. We therefore "should not disturb a trial court's factual findings unless those findings are 'so clearly mistaken that the interests of justice demand intervention and correction.'" Id. at 374 (citation omitted). The trial court's interpretation of the law and "the consequences that flow from established facts are not entitled to any special deference." State v. Gamble, 218 N.J. 412, 425 (2014).

Although a defendant's statement is not excluded as hearsay in a criminal trial against him, "the admissibility of a defendant's statement which is offered against the defendant is subject to Rule 104(c)." N.J.R.E. 803(b). "It is the State that must prove, beyond a reasonable doubt, that a defendant's statement was voluntary and, if made while in custody, that the defendant knowingly, voluntarily, and intelligently waived the rights afforded him under Miranda." Gore, 205 N.J. at 382. In determining whether a Miranda waiver was made knowingly, intelligently, and voluntarily, courts consider factors such as "the suspect's age, education and intelligence, advice as to constitutional rights,

A-0906-17T3

length of detention, whether the questioning was repeated and prolonged in nature and whether physical punishment or mental exhaustion was involved." State v. Presha, 163 N.J. 304, 313 (2000) (citation omitted); see also State v. Nyhammer, 197 N.J. 383, 402 (2009).

As he did before the trial judge, defendant now claims Bolivar failed to ascertain his level of education and intelligence prior to questioning him. He emphasizes his illiteracy, inability to speak English, poor memory, and lack of familiarity with the criminal justice system should have prompted Bolivar to ensure he understood his rights and the consequences of a Miranda waiver. Defendant's arguments are belied by the record:

> [PROSECUTOR]: When you read [defendant] the Miranda rights from this preprinted form, did he do or say anything that indicated whether or not he understood what was happening, what you were reading to him?
>
> [BOLIVAR]: After I read each of the Miranda rights, . . . he acknowledged that he understood each of those rights.
>
>      . . . .
>
> [PROSECUTOR] And was he asked to sign anything to physically indicate that he understood these rights?
>
>      . . . .

> [BOLIVAR] . . . after I read each of the rights and I asked him, if having the rights in mind, he was willing to speak to me, and he acknowledged that he was, I asked him to place . . . his initials next to each of the rights.

On cross-examination, Bolivar clarified, "He just said he didn't know how to read, but he understood everything that I was saying. . . . [When] I read [the form] to him, . . . he said that he understood what I was reading to him."

Nonetheless, for the first time on appeal, defendant attacks Bolivar's bias as the investigating officer and as the "interpreter," and claims the State failed to establish her proficiency in Spanish.[5]  Recently, our Supreme Court addressed the adequacy of an English to Spanish translation by a prosecutor's office detective where the defendant was more comfortable speaking in Spanish.  State v. A.M. ___ N.J. ___, ___ (2019) (slip op. at 3).   Like the present case, the defendant in A.M. was accused of sexually abusing a child relative.  Ibid.

Prior to the interview in A.M., the detective administered Miranda rights using a Spanish-language form prepared by the prosecutor's office, "pausing after reading each one to ask [the] defendant in Spanish if he understood."  Id.

---

[5]  To support his position, defendant relies on the concurring opinion in State v. A.M., 452 N.J. Super. 587, 602 (App. Div. 2018) (Fuentes, J., concurring), rev'd, ___ N.J. ___ (2019).  Following briefing on appeal, the Court rendered its decision in A.M.  Neither party has submitted a supplemental brief citing the Court's decision.  See R. 2:12-2(b).

9

at 4.  The defendant verbally affirmed in Spanish each time, and initialed the form next to each right.  Ibid.  The detective repeated that process with the waiver portion of the form.  Ibid.  The detective remained for the interview to "translate[] as needed," during which the defendant made an inculpatory statement.  Ibid.

The Court upheld the trial judge's determination that "the video showed [the] defendant reviewing the waiver portion of the form, signing his name to indicate that he read and attested to the waiver portion, appearing alert and cognizant while the form was explained to him and while he signed it, and responding to questions."  Id. at 8.  That conduct suggested the defendant understood his rights as well as the waiver.  Ibid.  Thus, the defendant's signature on the waiver form "constituted a knowing, intelligent, and voluntary express waiver."  Ibid.  The Court elaborated:

> While the better practice is to read the entire Miranda rights form aloud to a suspect being interrogated, based upon the trial court's factual findings we determine, however, the failure of [the detective] to do so here did not "improperly shift[] the burden of proof to defendant to alert the interrogating officers about any difficulty he may be having understanding the ramifications of a legal waiver."  To eliminate questions about a suspect's understanding, the entire Miranda form should be read aloud to a suspect being interrogated, or the suspect should be asked to read the entire form aloud.  Where

A-0906-17T3

> that is not done, the suspect should be asked about his or her literacy and educational background.
>
> [Ibid. (alteration in original) (emphasis added) (citation omitted)].

Unlike the detective in A.M., here Bolivar did not act as an interpreter; instead she administered Miranda rights in the language defendant acknowledged he understood. Indeed, the record is devoid of any indication defendant failed to understand her, even though the State did not elicit specific details concerning Bolivar's proficiency in Spanish or that they spoke the same dialect.

Moreover, defendant's interview was conducted nearly four years before the Court rendered its decision in A.M. Nonetheless, Bolivar adhered to the "better practice" of reading the waiver form aloud to defendant. Ibid. Because Bolivar employed that practice, and was readily able to determine defendant understood her questions, it was unnecessary for her to inquire further about his literacy and educational background. See ibid. As noted by the motion judge, the video recording of the waiver demonstrated "defendant's statement was completely knowing and voluntary." Those findings are supported by substantial credible evidence in the record. We therefore discern no reason to disturb the judge's decision. See S.S., 229 N.J. at 381.

Little needs to be said about defendant's newly-minted contention that Bolivar's introductory comments and pedigree questions nullified the Miranda warnings, which were administered immediately thereafter. Even when a defendant is in custody, police are not required to administer Miranda warnings before questioning to obtain routine pedigree information. See, e.g., State v. Melendez, 454 N.J. Super. 445, 457-58 (App. Div. 2018); State v. Mallozzi, 246 N.J. Super. 509, 515 (App. Div. 1991). Considered "ministerial in nature and beyond the right to remain silent," pedigree information falls outside the scope of Miranda. State v. M.L., 253 N.J. Super. 13, 21 (App. Div. 1991); Mallozzi, 246 N.J. Super. at 516.

Notably, each defendant in M.L., Mallozzi, and Melendez had been placed under arrest before police elicited pedigree information, thereby attenuating defendant's argument even further. Arguably, as the motion judge recognized, defendant was not in custody when Bolivar asked pedigree-related questions. Regardless, "[e]ven unexpected incriminating statements made by in-custody defendants in response to non-investigative questions by the police without prior Miranda warnings are admissible." M.L., 253 N.J. Super. at 21; see also Mallozzi, 246 N.J. Super. at 516.

II.

A.

We turn to defendant's final contention that his guilty plea violated Rule 3:9-2.[6]  For the first time on appeal, defendant claims the trial court denied his right to speak with an immigration attorney regarding "all of the potential immigration consequence[s] of his [guilty] plea . . . not just whether he would be deported[.]"  Defendant's claims are unavailing.

Pertinent to this appeal, after ascertaining that defendant was not a United States citizen, the plea judge[7] specifically asked defendant whether he had spoken with an immigration attorney.  After defendant indicated that he had not done so, his attorney interjected that she had "advised [defendant] as to the

---

[6]  Rule 3:9-2 provides in pertinent part (emphasis added):

> The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.

[7]  The plea judge was not the same judge who decided the State's motion to admit defendant's statement.

A-0906-17T3

effects of the guilty plea and that he would <u>almost certainly</u> be deported as a result of this guilty plea." (Emphasis added). The following exchange ensued between the court and defendant:

> THE COURT: Okay . . . you understand that you face deportation as a result of these charges?
>
> [DEFENDANT]: Yes.
>
> THE COURT: You understand that it could affect your ability to become a U.S. citizen?
>
> [DEFENDANT]: Whether it would be difficult or –
>
> THE COURT: Yes. It could affect -- it could prevent you from becoming a U.S. citizen.
>
> [DEFENDANT]: Yes.
>
> THE COURT: Do you understand that? Okay.
>
> [DEFENDANT]: Yes.
>
> THE COURT: And when you are deported if you attempt to come back into the country it could affect your ability to come back into the country.
>
> [DEFENDANT]: Yes, I understand that.
>
> THE COURT: Okay. You understand that you have a right to speak with an immigration attorney who can give you all the details of what's included with this plea agreement but by pleading guilty, without doing so, you're waiving your right to speak with an immigration attorney, do you understand that?

14

[DEFENDANT]: Yes, I understand.

THE COURT: And that's what you want to do today?

[DEFENDANT]: If there's an opportunity to do it then I have to do it.

THE COURT: Okay. . . . I provide you with the opportunity to speak with an immigration attorney, but we do not pay for the immigration attorney. You're represented by the Public Defendant's Office and it's been explained that you have no access to an immigration attorney or the funds to pay one on your own. So your public defender has coordinated with an immigration attorney and has provided you with the information that she was able to ascertain. So I could give you the chance to speak with an immigration attorney but if you don't have the money to hire one and you don't have the ability to get one, then you wouldn't be able to see one because we don't provide that for you.

[DEFENDANT]: Then I cannot do anything.

THE COURT: Okay. So you're waiving your right to speak with an immigration attorney and accepting the information that's been provided by your defense attorney?

[DEFENDANT]: Yes.

After defendant established a factual basis for aggravated sexual assault of X.M., the judge accepted defendant's guilty plea, finding it was entered "freely and voluntarily without threat or coercion."

15

B.

"For a plea to be knowing, intelligent and voluntary, the defendant must understand the nature of the charge and the consequences of the plea."  State v. Johnson, 182 N.J. 232, 236 (2005).  Relevant here, a defendant has a right to be informed about potential immigration consequences of pleading guilty.  Padilla v. Kentucky, 559 U.S. 356, 371 (2010); State v. Nuñez-Valdéz, 200 N.J. 129, 143 (2009).

In Nuñez-Valdéz, the Court found the defendant demonstrated he received ineffective assistance of counsel under Sixth Amendment standards when his first plea counsel had provided false advice assuring him that deportation would not flow from his guilty plea, and successor counsel compounded that with affirmatively misleading information concerning the deportation consequences of his plea of guilty.  Id. at 140-43.  The Court held that when counsel provides false or affirmatively misleading advice about the deportation consequences of a guilty plea, and the defendant demonstrates that he would not have pled guilty had he been provided with accurate information, an ineffective assistance of counsel claim has been established.  Id. at 143.

One year later, the United States Supreme Court decided Padilla v. Kentucky, holding that defense attorneys must advise their clients of potential

A-0906-17T3

immigration consequences of pleading guilty or risk providing constitutionally deficient assistance of counsel. 559 U.S. at 371. The Padilla Court distinguished cases in which deportation is certain from those in which the immigration consequences of a plea are not as clear. Specifically, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in th[at] case, the duty to give correct advice is equally clear." Id. at 369 (footnote omitted).

Applying the principles of Padilla and Nuñez-Valdéz to the facts of this case, we find no deficiency in the record. Nuñez-Valdéz proscribed affirmative misinformation and misleading advice, which is not at issue here. Instead, the record supports the conclusion that defendant knew with certainty he would be deported.

We further reject defendant's argument that the plea judge's use of the non-mandatory term, "could" in explaining collateral immigration consequences was inadequate because defendant had "a right to know if his plea completely foreclosed" United States citizenship or reentry into the country. There is no obligation in this State that defense counsel or the court apprise defendant with

17

complete certainty about collateral immigration consequences.[8]   Rather, defendant was entitled to information regarding <u>potential</u> immigration consequences of pleading guilty.  <u>Padilla</u>, 559 U.S. at 369; <u>see</u> <u>State v. Gaitan</u>, 209 N.J. 339, 363 (2012) (recognizing the same and acknowledging that there is no expectation that defense counsel "become versed in immigration law in order to secure a knowing and voluntary plea").  Because defendant was so informed here, we discern no basis to vacate his guilty plea.

To the extent not otherwise addressed, defendant's remaining contentions lack sufficient merit to warrant discussion in our written opinion.  <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8] Defendant briefly references statutes enacted in other jurisdictions, purporting to support his position that a court <u>must</u> advise a defendant of all collateral immigration consequences of a guilty plea.  However, at least some of those statutes only require the judge "to advise a defendant pleading guilty that the conviction <u>may</u> result in deportation, exclusion from admission to the United States, or denial of naturalization . . . ."  Cal. Penal Code § 1016.5 (Emphasis added).  Such was the procedure employed by the plea judge here.  Indeed, question 17 on the plea form spotlights that inquiry.

A-0906-17T3