**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0741-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MITCHELL G. BEARD,

    Defendant-Appellant.

_____

> Submitted March 24, 2025 – Decided April 10, 2025
>
> Before Judges Berdote Byrne and Jablonski.
>
> On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 18-04-0064.
>
> Jennifer N. Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Matthew J. Platkin, Attorney General, attorney for respondent (Ashlea D. Newman, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Mitchell G. Beard appeals the trial court's order denying his motion to suppress statements he made to law enforcement. After the trial court denied defendant's motion to suppress, defendant pled guilty to second-degree endangering the welfare of a child but preserved his right to appeal all pretrial motions. On appeal, defendant claims the trial court erred because the State failed to demonstrate defendant made a knowing and intelligent waiver as Miranda[1] rights were administered collectively to a group of individuals, including defendant, defendant immediately experienced a medical emergency, and was given a sedative before he was "interrogated" by law enforcement. We conclude defendant's spontaneous statements were not elicited by law enforcement and therefore, no interrogation occurred. Moreover, we conclude defendant voluntarily, knowingly, and intelligently waived his Miranda rights. We affirm the trial court's order denying defendant's motion to suppress his statements.

I.

Between June and August 2013, an agent of the United States Department of Homeland Security obtained videos from a file-sharing service that were suspected to contain child pornography. Law enforcement discovered the files

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0741-23

came from an IP address with a specific street address. The New Jersey Division of Criminal Justice confirmed the videos contained child pornography. A search warrant for the residence was executed. Upon entering the house, law enforcement encountered five individuals, including defendant, his brother, who was also charged but in a separate indictment, two other adults, and one juvenile. The officers detained all the individuals present in the house as they executed the search and handcuffed the adults. Once detained, law enforcement advised the individuals of their <u>Miranda</u> rights by reading from "a <u>Miranda</u> card."[2] After searching the residence, the officers found a computer containing the file-sharing software and the alleged child pornography, as well as firearms.

Defendant was indicted for: 1) "second-degree endangering the welfare of a child" in violation of N.J.S.A. 2C:24-4(b)(5)(a)(iii); 2) "second-degree endangering the welfare of a child" in violation of N.J.S.A. 2C:24-4(b)(5)(a)(i); 3) "third-degree endangering the welfare of a child" in violation of N.J.S.A. 2C:24-4(b)(5)(b); and 4) "second-degree unlawful possession of an assault firearm" in violation of N.J.S.A. 2C:39-5(f).

---

[2] In its oral decision at the <u>Miranda</u> hearing, the trial court explained that a "<u>Miranda</u> card" is "typically used by law enforcement in New Jersey regarding the right to silence, the right to counsel, and the right to have recourse to those rights even if initially waived."

At the <u>Miranda</u> hearing, the State called a detective who had participated in the execution of a search warrant. He recalled the officers had handcuffed all the adults present and moved everyone into the living room at the same time for safety reasons, where a police sergeant "followed through with reading <u>Miranda</u> warnings to all of the individuals collectively at the same time." The detective testified he saw defendant at the house and witnessed "his reaction to [the sergeant's] announcement about the charges, about the Miranda warnings." He testified he then observed defendant, who was sitting on the couch, "could [not] get comfortable" and was "very pale." After defendant stated his fingers were "tingling" and "he did [not] have feeling in them," the officers called emergency medical services ("EMS"), who assessed him and concluded he was having an anxiety attack. Nevertheless, EMS transported defendant to the hospital to examine him further, with the detective accompanying him because "although he had not been placed under arrest, he [was] still being detained," and there was a possibility that he would be charged. At the hospital, it was confirmed defendant was suffering from an anxiety attack and was given a sedative.

While the detective and defendant were at the hospital, the remaining officers at the residence were completing the search. The police sergeant executing the search called the detective and informed him the officers had

found child pornography on defendant's computer and defendant "was going to be charged." The detective then informed defendant the officers had found child pornography on his computer, advised him he was going to be charged with possession and distribution of child pornography, and "reminded him of his Miranda warnings, that he had been read previously." The detective testified less than an hour had passed between the initial reading of <u>Miranda</u> rights to defendant and the time he informed defendant of his charges.

The detective testified that, in response, defendant "blurt[ed] out" "but I deleted that sh[*]t, or something to that effect." He added that defendant "proceeded to try to explain his side of the story" and stated "when you go on . . . [the file sharing site]," you enter "a search term, such as[] . . . 'hot chicks.'" Defendant further explained to the detective:

> by doing so, [the site] will send you . . . . a whole grab bag of sh[*]t. Included in that grab bag may be child pornography.
>
> And, as he explained it to [the detective], if you delete it and then turn around and put in the same search terms, they're just going to send you the same stuff that they just sent you moments ago, right?
>
> So in order to avoid that, [defendant] would save the videos, . . . or whatever it consisted of, to a file he termed as downloads . . . . And then, later he would delete the downloads, maybe two weeks later or maybe

A-0741-23

a week later, not more than two weeks [later] he would delete [them].

The detective testified defendant was "just freely explaining his position" and attempting to exculpate himself; the detective believed defendant "was hoping to try and convince" him of his innocence and "there [would be] no need to charge [defendant]." He also testified, because defendant "was speaking freely" and "had been warned, not only once, but twice, of his Miranda rights," the detective then " ask[ed] him a few questions." The detective asked defendant about the other search terms he entered into the site that would "give cause or rise for [defendant] to receive child pornography."

The detective testified defendant seemed "coherent" and his responses were "appropriate" as to the questions being asked. The detective also testified at no point did defendant ask for an attorney or request the detective stop asking him questions. The detective explained he was not the lead investigator of defendant's case and it was not his intention to interrogate defendant.

The detective conceded, as of law enforcement's entry into the house, defendant was in custody. The Miranda card used by law enforcement, which included the names of three of the adult suspects, including defendant, and the signatures of the officers who witnessed the reading of the Miranda rights was entered into evidence.

A-0741-23

The trial court denied defendant's motion to suppress, making findings of fact and credibility determinations. Relying on the detective's testimony, which it deemed highly credible, the court found the <u>Miranda</u> warnings were "effectively administered to all those present" and "all receiving it, particularly this defendant, understood it."

Addressing what occurred at the hospital, the trial court found the following:

> According to the testimony of [the detective] and the total circumstances, it would appear that the defendant had been administered a sedative, was treated by the treating providers at the hospital, and that he was able to calm down as a result of the administration of . . . medical care. At that juncture, the detective indicated to the defendant and, in my view, not trying to elicit a response, but to merely inform the defendant that he, in fact, was going to be charged with crimes related to their investigation. And that as a result of informing him of that, the defendant, to use the words of [the detective], blurted out that "I deleted that sh[*]t" or words to that effect.

The trial court added the detective's reminder of defendant's <u>Miranda</u> rights, which occurred approximately forty-five minutes after defendant was read his <u>Miranda</u> rights in full, was "sufficient in order to advise and remind the defendant of his rights and for the defendant to make a knowing, intelligent, and voluntary waiver of same." It found there was no "inherently coercive

situation," and defendant was informed of his rights. The trial court concluded: "the defendant made a knowing, intelligent, voluntary waiver of his rights."

Thereafter, the State and defendant reached a negotiated plea agreement where the State would recommend a five-year prison sentence. Defendant subsequently pleaded guilty to "second-degree endangering the welfare of a child." The trial court sentenced defendant consistent with the negotiated plea agreement to a term of five years imprisonment. This appeal followed.

## II.

Our review of a decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). "'Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when "those findings are supported by sufficient credible evidence in the record."'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)); see also State v. Nelson, 237 N.J. 540, 551 (2019); State v. Boone, 232 N.J. 417, 425-26 (2017). We give deference to the trial court's factual findings in recognition of its "'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We "ordinarily will not disturb the trial court's factual

findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). Nevertheless, our review of the legal conclusions drawn from those facts is de novo. State v. Radel, 249 N.J. 469, 493 (2022); State v. Hubbard, 222 N.J. 249, 263 (2015). Relatedly, "we are not bound by the trial court's determination of the validity of the waiver, which is a legal, not a factual, question." State v. O.D.A.-C., 250 N.J. 408, 425 (2022).

In order to be admissible, a defendant is required to be administered his Miranda rights before a custodial interrogation. State v. Vincenty, 237 N.J. 122, 132 (2019) ("Law enforcement officers must first advise a suspect of the right against self-incrimination before attempting to obtain a waiver of the right."); Hubbard, 222 N.J. at 265 ("A confession or incriminating statement obtained during a custodial interrogation may not be admitted in evidence unless a defendant has been advised of his or her constitutional rights.").

The courts apply a two-prong test to determine whether there is a custodial interrogation and thus, whether Miranda protections apply. See State v. Tiwana, 256 N.J. 33, 37-38 (2023). "[T]he protections provided by Miranda are only invoked when a person is both in custody and subjected to police interrogation."

Hubbard, 222 N.J. at 266. Because the State concedes defendant was in custody while he was in the hospital, we focus solely on whether defendant was interrogated by law enforcement.

Our Supreme Court has "clarified the meaning of 'interrogation' pursuant to Miranda, noting that 'interrogation' for Miranda purposes 'must reflect a measure of compulsion above and beyond that inherent in custody itself.'" Tiwana, 256 N.J. at 42 (quoting Rhode Island v. Innis, 446 U.S. 291, 300 (1980)). Miranda protections apply "whenever a suspect is in police custody and 'is subjected to either express questioning or its functional equivalent,' which may include 'any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" Ibid. (omission in original) (quoting Innis, 446 U.S. at 300-01). "[A]lthough the latter portion of its definition of interrogation 'focuses primarily upon the perceptions of the suspect, rather than the intent of the police,' the police nevertheless 'surely cannot be held accountable for the unforeseeable results of their words or actions.'" Ibid. (quoting Innis, 446 U.S. at 301-02).

Statements that are "unsolicited, spontaneous, and not made in response to 'questioning or its functional equivalent'" do not violate Miranda. State v.

10

Beckler, 366 N.J. Super. 16, 25-26 (App. Div. 2004) (quoting State v. Ward, 240 N.J. Super. 412, 418 (App. Div. 1990)). Further, we have previously concluded "no Miranda violation [occurred] when a defendant's unexpected statements to police were in response to routine questions or incident to arrest and booking." Tiwana, 256 N.J. at 45; State v. Mallozzi, 246 N.J. Super. 509, 516-17 (App. Div. 1991) (concluding that the law enforcement agent's statements "informing defendant of the charges against him [were] not designated or done to elicit any type of response from defendant and thus place[d] [the agent's] actions outside of the Innis definition of 'interrogation'" (quoting Innis, 446 U.S. at 302)). In fact, even prior to receiving warnings, "unexpected incriminating statements made by in-custody defendants in response to non-investigative questions by the police . . . are admissible." Mallozzi, 246 N.J. Super. at 516.

The detective merely informed defendant of his charges and did not attempt to elicit any incriminating information. Defendant's statements were spontaneous, not the result of any interrogation, and made in an attempt to prove his innocence. As a result, we conclude no Miranda violations occurred despite defendant being in custody at the time he made the statements. There is nothing in the record to suggest the detective asked defendant any questions before he

11

informed defendant of these charges and defendant blurted out what he thought would be exculpatory information. Defendant's response to the detective's statement was an "unexpected incriminating statement[] made by [an] in-custody defendant[] in response to non-investigative questions by the police," which would be admissible even without "prior Miranda warnings." Ibid.

Moreover, even though we agree with the trial court there was no interrogation, and therefore, Miranda protections do not apply, law enforcement recited the Miranda rights to defendant and he voluntarily, knowingly, and intelligently waived his rights.

A person may waive the right against self-incrimination. Vincenty, 237 N.J. at 132. In the context of custodial interrogations, "[l]aw enforcement officers must first advise a suspect of the right against self-incrimination before attempting to obtain a waiver of the right." Ibid. Once so advised, this waiver can be express or implied. State v. Bullock, 253 N.J. 512, 534 (2023). "Our law . . . does not require that a defendant's Miranda waiver be explicitly stated in order to be effective." State v. Tillery, 238 N.J. 293, 316 (2019). It is sufficient that there is some clear manifestation of the defendant's desire to waive the right. A.M., 237 N.J. at 397.

Here, defendant clearly manifested a desire to waive his right to remain silent and his right against self-incrimination because he chose to speak with the detective about his charges, apparently hoping to provide a legitimate excuse for the child pornography found on his computer. Defendant not only "blurt[ed] out . . . I deleted that sh[*]t," but he also then proceeded to "try to explain his side of the story," including the site he used, the search terms he entered into it, and the "grab bag" he would receive that he alleged unwittingly included child pornography. The detective testified he did not ask any questions until defendant began "just freely explaining his position," which the detective believed was defendant "hoping to try and convince" him that there was "no need to charge" him. The trial court considered, when considering the totality of the circumstances in determining the validity of the waiver, defendant was advised of his constitutional rights when he was read his Miranda rights initially, and later reminded of them, and less than an hour passed between the reading of his Miranda rights and his allegedly incriminating statements to the detective.

Although defendant argues he did not make a voluntary statement because he was under the influence of a sedative given to him at the hospital to treat his anxiety attack, we disagree. Defendant voluntarily made the statements to the detective. There is no evidence in the record that defendant was threatened,

promised anything in return for his incriminating statements, or was unduly influenced. See Brady v. United States, 397 U.S. 742, 753 (1970). Further, the fact that a suspect makes a statement while under the influence of an intoxicant does not render the statement automatically inadmissible. See State v. Wade, 40 N.J. 27, 35 (1963) (holding "[a] confession made by a person while under the influence of drugs is not per se involuntary").

At the Miranda hearing, the trial court concluded the detective credibly testified defendant was coherent when he spoke with the detective at the hospital and his responses were appropriate. Although defendant was under the influence of medication, his waiver was voluntary.

We conclude defendant's statements were admissible, and accordingly affirm the trial court's October 28, 2020 order denying the motion to suppress his statements.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

14